## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Rosalind Davis and Harry Davis, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania | Civil Action #2:13-CV-_____ |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| Bank of America, N.A., a debt collector-servicer; and, McCabe, Weisberg & Conway, P.C., a debt collector-law firm; Terrence J. McCabe, an individual; Marc S. Weisberg, an individual; and Edward D. Conway, an individual | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Homeowners, Rosalind and Harry Davis (the "Davises"), bring this class action on behalf of themselves and all others similarly situated, for their Class Action Complaint ("Complaint") against servicer, Bank of America, N.A. ("BOA"), foreclosure counsel, McCabe, Weisberg & Conway, P.C. ("MWC"), and MWC's managing Partners, Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway. This is a consumer class action Complaint filed by Pennsylvania homeowners against BOA, as servicer, and foreclosure counsel, MWC, who demanded contractually unauthorized and illegal foreclosure-related attorneys' fees. This suit challenges the Defendants' systemic practices of demanding attorneys' fees that are not authorized by the Homeowners' mortgage contracts and that are illegal under federal and state statutory law, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*; and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1,

*et seq.*

## JURISDICTION AND VENUE

1.  The jurisdiction of this Court over federal Counts I and II arises under the Class Action Fairness Act, 28 U.S.C.A. §1332(d)(2) where the amount in controversy exceeds $5,000,000.00. Jurisdiction over Count I and Count II also exists under RICO, 18 U.S.C. §1964(c); the FDCPA, §1692(k)(d); and, 28 U.S.C. §1331.  Supplemental jurisdiction over state law Count III arises under 28 U.S.C. §1367.  Venue lies in the Eastern District of Pennsylvania because MWC is located there and a significant part of the activities complained of herein were developed and implemented in Philadelphia County.

## THE PARTIES

2.  Plaintiffs, Rosalind and Harry Davis, are married homeowners residing at 645 Hillside Drive, Pittsburgh, Pennsylvania.  Mr. and Mrs. Davis bring this action on their own behalf and on behalf of similarly situated homeowners.  As homeowners, the Davises are "persons" as defined by RICO, 18 U.S.C. §1961(3) and "consumers" as defined by the FDCPA, 15 U.S.C. §1692a(3).  On October 24, 2005, Mr. and Mrs. Davis signed a promissory Note and Mortgage with lender Countrywide Home Loans, Inc. ("Countrywide") to refinance their home in the amount of $89,250.00.  They agreed to repay their Note, plus interest, in monthly payments over a thirty (30) year period beginning December 1, 2005.  Exhibits A-B (Note & Mortgage).

3.  Defendant, Bank of America, N.A. ("BOA"), is a national bank with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina.  From July 2008, until approximately October 2012, BOA was the servicer of the Davises' Mortgage.[1]  BOA is also a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692(a)(6).  Servicers almost always

---

[1] "*Servicer* means the person responsible for the servicing of a mortgage loan (including the person who makes or holds a mortgage loan if such person also services the mortgage." <u>See</u> 12 C.F.R. §1024.2.

retain foreclosure debt collecting counsel on behalf of the foreclosing lender and here BOA retained MWC to file the Foreclosure Complaint against the Davises on behalf of Bank of New York Mellon f/k/a the Bank of New York as Trustee for the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2005-13 ("BNY Mellon").   Exhibit C (Foreclosure Complaint).

4.  Defendant, McCabe Weisberg & Conway, P.C. ("MWC"), is a professional corporation with a law office located at 123 South Broad Street, Suite 2080, Philadelphia, Pennsylvania.  As debt collecting counsel, MWC filed a Foreclosure Complaint against the Davises.  Exhibit C. MWC is also an "enterprise" as defined by RICO, 18 U.S.C. §1961(3) and a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692(a)(6).  It is believed, and therefore averred that there are written retainer agreements between BOA and MWC.

5.  Defendant, Terrence J. McCabe, is an individual and Pennsylvania-licensed attorney.  He is a founding shareholder, managing President and a Partner of MWC, with offices in Philadelphia, Pennsylvania.  Under Count I, Mr. McCabe is also a Defendant-person as defined by RICO, 18 U.S.C. §1961(3).

6.  Defendant, Marc S. Weisberg, is an individual and Pennsylvania-licensed attorney.  He is a founding shareholder, managing Vice President and a Partner of MWC, with offices in Philadelphia, Pennsylvania.  Under Count I, Mr. Weisberg is also a Defendant-person as defined by RICO, 18 U.S.C. §1961(3).

7.  Defendant, Edward D. Conway, is an individual and Pennsylvania-licensed attorney.  He is a founding shareholder, managing Secretary and a Partner of MWC, with offices in Philadelphia, Pennsylvania.  Under Count I, Mr. Conway is also a Defendant-person as defined by RICO, 18 U.S.C. §1961(3).

## OTHER PERSONS AND ENTITIES

8.   Non-party, Countrywide Home Loans, Inc. ("Countrywide"), is a failed lender that was acquired by BOA in 2008.  After BOA's acquisition of Countrywide, Countrywide was renamed Bank of America Home Loans ("BAC Home Loans").   See Federal Trade Commission v. Countrywide Home Loans, Inc., and BAC Home Loans Servicing, LP, No. 10-41930-JFW-SSX, Document 15 (C.D.Cal. March 22, 2012).

9.   Non-party, Bank of America Home Loans was a wholly owned subsidiary of BOA until 2011 when it was merged into BOA.  See Federal Trade Commission.

10.  Non-party, Bank of New York Mellon Corporation ("BNY Mellon"), is an international banking and financial services company with a principal address at 1 Wall Street, New York, New York.  As a Trustee, BNY Mellon as Trustee is the Certificateholder of the CWABS Inc., Asset-Backed Certificates, Series 2005-13, and the purported holder of the Davises' Note.

11.  Non-party, Mortgage Electronic Registration Systems, Inc. ("MERS"), is a mortgage electronic registration system; a company sponsored and instituted by mortgage companies. According to the Davises' Mortgage, MERS was the nominee for Countrywide and Countrywide's successors and assigns.  Exhibit B.  As nominee-mortgagee, it was authorized to act as the mortgagee.  MERS was not authorized to transfer Notes.

12.  Non-party, Green Tree Servicing, LLC ("Green Tree"), is a mortgage servicer to BOA and has an address of 345 St. Peter Street, St. Paul, Minnesota.  Green Tree, as of September 16, 2012, became the successor-servicer of the Davises' Mortgage and current servicer.  Exhibit B.

## FACTUAL BACKGROUND

### A.  The Davises Refinance Their Home

13.  On October 24, 2005, Countrywide was the owner of both Mr. and Mrs. Davises' Note and Mortgage.  Exhibits A-B.  The Mortgage authorized Countrywide to transfer or sell the Note

and Mortgage, as well as provide for the separate transfer of its servicing rights.[2]  Mortgage, ¶20, which, *inter alia*, provides:

> **Sale of Note; Change of Loan Servicer; Notice of Grievance**.
> The Note or a partial interest in the Note (together with this
> Security Instrument) can be sold one or more times without prior
> notice to Borrower.  A sale might result in a change in the entity
> (known as the "Loan Servicer") that collects Periodic Payments
> due under the Note and this Security Instrument and performs
> other mortgage loan servicing obligations under the Note, this
> Security Instrument, and Applicable Law.  There also might be one
> or more changes of the Loan Service unrelated to a sale of the
> Note.

14. Where, as here, the terms of the Mortgage are separated, the sale or transfer is known as a "servicing-retained" basis.

15. The Mortgage designated MERS as both the "nominee for [the] Lender and Lender's successors and assigns."  Exhibit B, ¶1.  As nominee, it was authorized to act as the mortgagee.

16. On September 24, 2010, MERS purported to assign the Mortgage as Nominee from Countrywide to BNY Mellon, as Trustee.  Exhibit D.  This Assignment did not include an assignment of the Davises' Note.

17. On October 20, 2011, MERS, for a second time, purported to assign the Mortgage as Nominee to BNY Mellon.  Exhibit E.  This second Assignment also purported to assign the Davises' Note to BNY Mellon.  This second Assignment was the first purported actual Assignment of the Note from Countrywide to BNY Mellon.  As noted, MERS did not have the authority to assign the Note.

---

[2]  *Servicing* means receiving any scheduled periodic payments from a borrower pursuant to the terms of any mortgage loan, including amounts for escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract.
*See* 12 C.F.R. §1024.2.

18. Soon after closing, Countrywide packaged the Davises' Note with a larger pool of notes, which were then transferred on a servicing-retained basis to Bank of New York Mellon, as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2005-13.

### B. Relevant Mortgage Terms Regarding Foreclosures-Related Attorneys' Fees

19. Neither law firm, MWC nor servicer, BOA was authorized under the Mortgage contracts to charge and/or collect foreclosure-related attorneys' fees.  Exhibit B, ¶¶9 and 22.

20. The Davises' Mortgage contract authorizes, *inter alia*, that the lender may not charge foreclosure-related attorneys' fees except as explicitly authorized below:

> **Protection of Lender's Interest in the Property and Rights Under this Security Instrument**… [T]hen the Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including... (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument.
> Any amount disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

<u>See</u> Exhibit B, ¶9.

21. This Mortgage authorizes that, in instances of default, the lender may only charge the homeowners for attorneys' fees for services actually preformed (i.e., incurred) in connection with that default.  Exhibit B, ¶22, which provides:

> Lender shall be entitled to collect all expenses <u>incurred in pursuing the</u> remedies <u>provided in this Section 22</u>, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.  (Emphasis added)

22. The foreclosure-related attorneys' fees itemized in the Foreclosure Complaint were not fixed in the dollar amount set forth and actually incurred, and, therefore, were not authorized by

the Mortgage. Yet those fees were charged to and liened against the Davises' and Homeowners' properties. Accordingly, these foreclosure attorneys' fees amounted to charging fees for legal services not performed and not yet incurred.

23. In the context of foreclosure-related attorneys' fees, the Mortgage only authorizes the collection of charges incurred. Exhibit B, ¶22, quoted above.

24. Neither BNY Mellon nor BOA was contractually authorized to charge and/or collect foreclosure-related attorneys' fees before the fee was actually incurred or before MWC preformed such legal services. Exhibit B, ¶22, quoted above.

25. Neither BNY Mellon nor BOA was contractually authorized to charge and/or collect foreclosure-related attorneys' fees that were unreasonable, i.e., fees charged on a percentage or fixed basis instead of an hourly rate method. Exhibit A, ¶7(E).

26. These foreclosure-related attorneys' fee provisions are standard terms found in most, if not all, residential mortgages.

### C. BOA Caused to be Filed Through MWC a Foreclosure Complaint that Contained Deceptive and Misleading Information and That Demanded Unauthorized and Illegal Foreclosure-Related Attorneys' Fees

27. Mr. Davis was seriously and permanently injured in 1998 by his work supervisor and was unable to continue working at that establishment. About eight years later, Mr. Davis was able to obtain employment, but at a substantial pay decrease. His inability to continue earning his pre-injury salary placed a severe financial loss upon his family. In 2008, two nephews and three family friends perished in a fire, and the Davises attempted to provide financial assistance to their family, although they had a limited income. Previously, Mrs. Davis' sister, Carolyn Rankin, was murdered and Mr. and Mrs. Davis took in and started supporting Ms. Rankin's three children. As a result of the economic injuries created by these tragedies, Mr. and Mrs. Davis were temporarily unable to make their monthly mortgage payments to servicer BOA.

28. On July 16, 2012, BNY Mellon filed a Foreclosure Complaint against the Davises in Allegheny County, Pennsylvania through its debt collector, MWC.  Exhibit C.  BOA, BNY Mellon's agent and servicer, verified the Foreclosure Complaint on July 10, 2012.  Id.

29. BNY Mellon's Foreclosure Complaint, ¶8, pled that as of the pre-foreclosure date of July 16, 2012, a total of $156,512.50, was due and owing, which amount included $1,450.00 in foreclosure attorneys' fees.  These attorneys' fees, along with the prior foreclosure attorneys' fees of $655.00, as demanded, were not due or owing as of July 16, 2012.

30. BNY Mellon's Foreclosure Complaint failed to indicate on what date the demanded amounts, as set forth above, became due and owing.

31. The Foreclosure Complaint failed to provide any documentation that supports the fixed foreclosure-related attorneys' fees demanded, and it did not include the dates those fees were incurred by BOA.  It is believed, and therefore averred, that as of July 16, 2012, no such documentation or contractual authorization exists.  In addition, BNY Mellon had not incurred foreclosure-related attorneys' fees, as charged to the Davises, for the legal services allegedly performed as of July 16, 2012.

32. With respect to attorneys' fees, the Foreclosure Complaint demanded fixed attorneys' fees in the amounts of $1,450.00 and $655.00.  Not only are these fixed amounts not reflective of work MWC actually performed and invoiced, but there is no indication that BNY Mellon incurred those amounts as of or before July 16, 2012.  In accord with the Mortgage, only incurred and reasonable fees, may be demanded in a foreclosure complaint.

33. The attorneys' fees demanded therein were not based on legal services performed and invoiced by MWC or that BNY Mellon or BOA actually incurred as of July 16, 2012.

34. Mr. and Mrs. Davis have paid a portion of the Foreclosure Complaint's demanded

amount, including, *a fortiori,* a portion of the foreclosure fees demanded.  The amount demanded in the Foreclosure Complaint was liened against the Davises' home.

35. The Foreclosure Complaint demanded attorneys' fees from the Davises that were misleading and/or deceptive because the amounts were inflated, unreasonable and were unincurred.  The lien wrongly caused a diminution in the value of the Davises' home.  Mr. and Mrs. Davis have suffered deprivation of property equal to the inflated attorneys' fees liened against, and encumbering, the Davises' home.  Part of their property loss was as a result of the post-Foreclosure Complaint, partial monthly payments.

### D. In Pennsylvania, a Prothonotary Lacks the Judicial Power to Issue an Unliquidated Award

36. MWC and BNY Mellon also collected foreclosure-related attorneys' fees, in fixed amounts not yet incurred, from class members after the entry of the final foreclosure judgment that consisted of unliquidated, as opposed to liquidated, amounts.  Such unliquidated amounts cannot be determined by the Prothonotary or its Deputy, as explained below.  See Pa.R.Civ.P. 1037(b)(1), which provides:

> The prothonotary shall assess damages for the amount to which the plaintiff is entitled if it is a sum certain or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages.

37. A Prothonotary in Pennsylvania lacks the judicial power to enter a monetary judgment for unliquidated damages absent express direction from an Article V court.  The Prothonotary is only empowered to enter a default judgment for liquidated damages of a "sum certain or which can be made certain by computation…"  See Pa.R.Civ.P. 1037 (b)(1) ("The Prothonotary shall assess damages for the amount to which the plaintiff is entitled if it is a sum certain or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which

time issues shall be limited to the amount of the damages").

## CLASS ALLEGATIONS

38. This Fed.R.Civ.P. 23(b)(3) class consists of Mr. and Mrs. Davis and former or current homeowners ("Homeowners") who obtained financing secured by a first mortgage on residential property located within the Commonwealth of Pennsylvania, where MWC caused a foreclosure complaint to be filed against Homeowners, and where BOA was a servicer for all or part of the time period within six years of the filing of this Complaint.

### A. Numerosity

39. The class is so numerous that it is impracticable to bring all Homeowners before the Court. The exact number of Homeowners is unknown, but is believed to be over ten thousand. The exact number and identity can be determined by BOA's and MWC's records.

### B. Commonality and Predominance

40. There are questions of law and fact common to the Class and which predominate over any issues affecting only individual members. Fed.R.Civ.P. 23(a)(2) and Fed.R.Civ.P. 23(b)(3). Without limitation, the focus of the litigation will be MWC's uniform demand for foreclosure-related attorneys' fees and collection procedures. Here, it is argued that MWC's practices violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1964(c); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*; and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1, *et seq.*

41. MWC practices give rise to common questions of law that predominate, including:

    a. whether its billing practices constitute a scheme or artifice to defraud;

    b. whether MWC planned and executed the schemes;

    c. whether BOA's and MWC's involvement rises to the level of "conducting or participating in the affairs of" the enterprise within the meaning of 18 U.S.C.

§1962(c);

d. whether the nature of the economic injuries suffered by class members was caused by predicate acts of wire/mail fraud, thereby entitling the class members to sue MWC under RICO;

e. whether the nature of the economic injuries suffered by class members entitled the class members to sue BOA and MWC under the FDCPA; and,

f. whether the nature of the economic injuries suffered by class members entitled the class members to sue BOA and MWC under the UTPCPL.

### C. Typicality

42. Mr. and Mrs. Davises' claims are identical, or at least typical, to the class claims. The Davises and the class of Homeowners have sustained virtually identical types of damages, have been subjected to identical foreclosure-related attorneys' fees collection practices, and their claims arise from identical or virtually identical provisions in their Mortgages. Moreover, the claims that are advanced are based on identical contractual and statutory legal theories. Damages can be mechanically and mathematically determined from business records maintained by BOA and MWC. See Fed.R.Civ.P. 23(a)(3).

### D. Adequacy of Representation

43. The Davises are adequate class representatives because their interests coincide with, and are not antagonistic to, the interests of the members of the class they seek to represent and they have retained counsel competent and experienced in such litigation. Fed.R.Civ.P. 23(a)(4).

### E. Superiority

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Fed.R.Civ.P. 23(b)(3). The damages sought by Mr. and Mrs. Davis and each Homeowner-class members are such that individual prosecution would prove burdensome

and expensive, given the complex and extensive litigation necessitated by MWC's conduct. It would be virtually impossible for members of the class to individually redress the wrongs done to them in an effective manner. Many, if not most, of the class members are unaware of their rights under their mortgage contracts and their foreclosure rights under federal and state law. Even if the members themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system given the complex legal and factual issues raised by BOA's and MWC's foreclosure-related conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

## COUNT I

**Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway Violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)**

45. The preceding paragraphs are incorporated. Section 1962(c) of RICO provides that it:

> [S]hall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

46. Defendants, Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway ("MWC Partners"), violated RICO by committing mail and/or wire fraud to further BOA's unauthorized and/or illegal attorneys' fees collection schemes. The Davises and the class of Homeowners were damaged as a result.

47. MWC Partners are "persons" as defined by RICO, §1961(3). MWC Partners violated RICO, §1962(c) by the unauthorized and/or illegal foreclosure acts incorporated.

48. MWC is an "enterprise" as defined by RICO, §1961(4).  As an Enterprise, MWC has engaged in, and its foreclosure activities have affected, interstate commerce.

49. The MWC Partners are associated with or employed by MWC to file foreclosure complaints, wherein unauthorized and unincurred attorneys' fees for services not performed were demanded.  MWC Partners knowingly, willfully and unlawfully conducted or participated, directly or indirectly, in the foreclosure activities of MWC through a pattern of racketeering activity within the meaning of RICO, §§1961(1), 1961(5), and 1962(c).  The racketeering activity was made possible by MWC's reliance on MWC Partner's debt collecting activities for BNY Mellon and other lenders.  MWC's Partners had the specific intent to engage in the substantive RICO conduct as alleged.

50. MWC's Partners made a number of unauthorized and/or illegal foreclosure-related attorneys' fees attempts and communicated with the MWC Enterprise by mail and/or wire (i.e., electronically) as well as through the U.S. mails in furtherance of MWC's foreclosure overcharging and collection scheme.  MWC's Partners would have been unable to carry out its illegal attorneys' fees collection schemes unless it used the U.S. mails or interstate wires which constitute predicate acts of racketeering activity indictable under 18 U.S.C. §1961(1)(B).

51. Operating through the MWC enterprise, MWC's Partners developed and implemented policies and procedures as an instrumentality to carry out the unauthorized and/or illegal attorneys' fees collection schemes.  These policies and procedures include filing foreclosure complaints that contained demands for attorneys' fees that were unauthorized and/or illegal.

52. The wrongful foreclosure-related attorneys' fees charged, liened and/or collected from homeowners resulted in economic benefits to MWC's Partners, as well as the MWC enterprise. MWC, as the foreclosure firm charged unauthorized and/or illegal attorneys' fees based on

MWC's Partners, and other partners and associates, fixed fee demands.  MWC's Partners, as foreclosure counsel, collected fees through MWC from Mr. and Mrs. Davis and the class of Homeowners that bear no relation to the work it actually performed, which fixed fees were not based on work done on an hourly basis, and were in excess of those authorized by the mortgages and/or permitted by state law.  MWC's Partners use of the U.S. mails or interstate wires to carry out MWC's schemes economically injured the Davises and the class of Homeowners.

53. MWC's Partners foreclosure-related racketeering acts were not isolated, but were related in that they had the same or similar purpose and result, participants, and foreclosure-related methods of commission.   Further, MWC's Partners racketeering acts were ongoing and continuous for the ten year period preceding this lawsuit.

54. The MWC Enterprise was not limited to the predicate acts and extended beyond its racketeering activities to legitimate servicing activities outside of the foreclosure procedure.  It existed separate and apart from the pattern of its racketeering activities for the legitimate business purpose of legal services.  MWC's Partners also have, and still engage in, legitimate business outside of its pattern of racketeering activities.

55. MWC's Partners participated in the acts of MWC through the multiple acts of racketeering as described in this Complaint.  MWC's Partners committed acts constituting indictable offenses under 18 U.S.C §§1341 and 1343 in that it devised or intended to devise schemes to collect unauthorized and/or illegal attorneys' fees from the Davises and the class of Homeowners.  For the purpose of executing its schemes, MWC's Partners caused documents to be delivered by the U.S. mails or received such therefrom.  MWC's Partners also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings.  The acts of MWC's Partners set forth above were done with knowledge that the use of

the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.  These acts were done intentionally and knowingly with the specific intent to advance MWC's Partners wrongful schemes and participate in MWC's wrongful attorney fee collection scheme.

56. MWC's Partners violations of state and federal law, as set forth in this Complaint, each of which directly and proximately economically injured the Davises, constituted a continuous course of conduct beginning within the ten (10) years preceding the date on which this Complaint is filed and continuing through the present.  These violations, including charging and collecting unauthorized and illegal attorneys' fees, which were a part of a pattern of racketeering activity under RICO, §§1961(1) and (5).

57. MWC's Partners have conducted and/or participated, directly or indirectly, in the conduct of the servicing affairs of the MWC Enterprise through a pattern of racketeering activity as described herein in violation of RICO, §1962(c).

58. The unlawful actions of MWC's Partners have directly, illegally, and proximately caused and continue to cause economic injuries to the Davises.  The Davises seek an award of damages for the economic injury created by MWC's Partners series of unauthorized and illegal attorneys' fees charges, liens and/or collections.

**Claim for Relief**

WHEREFORE, Homeowners respectfully request a statutory award of triple actual damages against MWC's Partners as provided for in RICO, 18 U.S.C. §1964(c) within the four (4) years preceding the date on which this Complaint is filed.

## COUNT II

**BOA and MWC Violated the FDCPA by Charging, Liening and/or Collecting
Unauthorized and Illegal Attorneys' Fees**

59. The preceding paragraphs are incorporated.  This Count is brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq*., against BOA and MWC.

60. The Foreclosure Complaints that Defendants BOA and MWC caused to be filed demanded fixed attorneys' fees that were neither contractually authorized, legal nor reasonable because they were not actually incurred.  Nor were they based on hourly rates, and therefore, had to be determined and set by a court.  Thus, Defendants, BOA and MWC, violated the FDCPA by representing to Homeowners in Foreclosure Complaints that that they owed amounts they did not owe, including charges for, *inter alia*, unauthorized, unincurred and illegal foreclosure-related attorneys' fees.

61. Debt collectors that make false representations about the "character, amount or legal status of any debt" violate the FDCPA, §1692e(2)(A).

62. Debt collectors that charge, attempt to collect or collect amounts that are not "expressly authorized by the agreement creating the debt or permitted by law" violate the FDCPA, §1692f(1).  BOA and MWC violated the FDCPA by charging and/or collecting such charges.

**Claim for Relief**

WHEREFORE, Homeowners respectfully request actual damages or statutory damages, whichever is greater, pursuant to 15 U.S.C. §1692k against BOA and MWC for their FDCPA violations within one year preceding the date on which this Complaint is filed.

## COUNT III

**BOA and MWC Misrepresented and/or Charged and Liened Unauthorized and/or Illegal Attorneys' Fees Thereby Violating the UTPCPL**

63. The preceding paragraphs are incorporated, except for Count I.  This Count arises under the UTPCPL, §201-9.2.  The UTPCPL prohibits the following unfair practices:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
> …
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

64. Defendants, BOA and MWC, violated the UTPCPL by overcharging Homeowners for attorneys' fees and placed wrongful liens on their properties, thereby misrepresenting the amount that they actually owed.  Defendants also charged Homeowners for attorneys' fees that were not authorized by the Mortgage.  These actions violated the UTPCPL, §201-2(4), by "representing that… services have… characteristics… that they do not have" and by "engaging in… fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

65. Defendants BOA and MWC violated the UTPCPL and Homeowners suffered an ascertainable loss by either paying the misrepresented and overcharged attorneys' fees in whole or in part.  Nevertheless, where Homeowners did not make an actual monetary payment, Homeowners suffered an ascertainable loss of property when the unauthorized attorneys' fees were liened against their homes, thereby decreasing the value of their property.  The fact of the Homeowners' payments or the effect of the inflated lien on their property added to their debt, automatically established reliance on BOA's and MWC's deceptions and misrepresentations.

66. Homeowners have suffered damages as a result of the deceptions, misrepresentations and overcharges made by Defendants, BOA and MWC, including, *inter alia*, payment of excessive

unauthorized and illegal attorneys' fees and by Defendants BOA and MWC unauthorized and unincurred illegal liens on their property resulting from the charging, collecting and liening.

**Claim for Relief**

WHEREFORE, Homeowners respectfully request an award of actual damages or statutory damages, whichever is higher, pursuant to the UTPCPL, §201-9.2, against BOA and MWC, for their UTPCPL violations during the six (6) years preceding the date on which this Complaint is filed.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, Rosalind and Harry Davis, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania, respectfully request that this Honorable Court award the following relief against Defendants, Bank of America, N.A.; McCabe, Weisberg & Conway, P.C.; Terrence J. McCabe; Marc S. Weisberg; and, Edward D. Conway:

(1) Under Count I, an award of statutory triple damages against Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway as provided for in RICO, 18 U.S.C. §1964(c) within the four (4) years preceding the date which Homeowners' Complaint was filed based on the damages to the Davises and the class of Homeowners.

(2) Under Count II, an award of actual damages or statutory damages, whichever is higher, pursuant to the FDCPA, 15 U.S.C. §1692k against BOA and MWC resulting from their FDCPA violations.

(3) Under Count III, an award of actual damages or statutory damages, whichever is higher, pursuant to the UTPCPL, §201-9.2, against BOA and MWC resulting from their UTPCPL violations.

(4) Such other relief, including statutory attorneys' fees, costs and expenses, as this Honorable Court deems just and equitable.

Respectfully Submitted,
MICHAEL P. MALAKOFF, P.C.

_____

Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Jonathan R. Burns, Esquire
Pennsylvania Attorney I.D. #315206
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile:  (412) 281-3262
malakoff@mpmalakoff.com
*Attorneys for Plaintiffs Rosalind Davis and Harry Davis, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

July 26, 2013