# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ROSALIND DAVIS and HARRY DAVIS,
individually and on behalf of all others
similarly situated,

            Plaintiffs,

     v.

BANK OF AMERICA, N.A., and MCCABE,
WEISBERG & CONWAY, P.C., TERRENCE
J. MCCABE, MARC S. WEINBERG, and
EDWARD D. CONWAY,

            Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 13-4396

## [PROPOSED] ORDER

**AND NOW**, this ___ day of _____, 2014, upon consideration of the Motion of
Defendant Bank of America, N.A. to Dismiss Plaintiffs' Amended Complaint, and any and all
supporting material and responses thereto, it is hereby **ORDERED** that the Motion to Dismiss is
**GRANTED**, and all claims purportedly asserted against Defendant Bank of America, N.A. in
Plaintiffs' Amended Complaint (specifically Counts II-IV of Plaintiffs' Amended Complaint) are
dismissed with prejudice.

**BY THE COURT:**

_____
                    TUCKER, C.J.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROSALIND DAVIS and HARRY DAVIS, individually and on behalf of all others similarly situated, | : : : |
| | : Civil Action No. 13-4396 |
| Plaintiffs, | : |
| v. | : |
| | : |
| BANK OF AMERICA, N.A., and MCCABE, WEISBERG & CONWAY, P.C., TERRENCE J. MCCABE, MARC S. WEINBERG, and EDWARD D. CONWAY, | : : : : |
| | : |
| Defendants. | : |

**MOTION OF DEFENDANT BANK OF AMERICA, N.A.**
**TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Bank of America, N.A. moves the Court to dismiss, with prejudice, all the purported claims asserted against Bank of America, N.A. in Plaintiffs' Amended Complaint, specifically Plaintiffs' purported claims under the Fair Debt Collection Practices Act (Count II), the Pennsylvania Loan Interest and Protection Law (Count III), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count IV). Plaintiffs have failed to state any claim against Bank of America, N.A. upon which relief can be granted.

The grounds for this Motion are set forth in more detail in the Memorandum of Law in Support of Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiffs' Amended Complaint, which is filed simultaneously with this Motion and is incorporated herein.

Wherefore, Defendant Bank of America, N.A. requests that the Court dismiss all of Plaintiffs' claims against Bank of America, N.A. (specifically Counts II-IV of the Amended Complaint) with prejudice, for failure to state a claim upon which relief can be granted. A proposed order is submitted herewith.

Respectfully submitted,

/s/ *Andrew J. Soven*
Andrew J. Soven
   asoven@reedsmith.com
Marc A. Goldich
   mgoldich@reedsmith.com
REED SMITH LLP
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103
(215) 851-8100

*Attorneys for Defendant*
*Bank of America, N.A.*

Dated: May 19, 2014

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSALIND DAVIS and HARRY DAVIS, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiffs, | : : | Civil Action No. 13-4396 |
| v. | : : | |
| BANK OF AMERICA, N.A., and MCCABE, WEISBERG & CONWAY, P.C., TERRENCE J. MCCABE, MARC S. WEINBERG, and EDWARD D. CONWAY, | : : : : : | |
| Defendants. | : : | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Andrew J. Soven
  asoven@reedsmith.com
Marc A. Goldich
  mgoldich@reedsmith.com
REED SMITH LLP
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103
(215) 851-8100

*Attorneys for Defendant*
*Bank of America, N.A.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................1

II. ALLEGATIONS IN THE COMPLAINT ...........................................................2

   A. Plaintiffs' Loan And Subsequent Default. ..........................................................2

   B. Plaintiffs' Claims Against BANA. .....................................................................4

III. LAW AND ARGUMENT ...................................................................................4

   A. Standard Of Review For A Motion To Dismiss. .................................................4

   B. Plaintiffs' Claims Fail Because, Like The Original Complaint, The
      Amended Complaint Does Not Adequately Plead That The Alleged
      Attorneys' Fees Were "Unauthorized" By Plaintiffs' Mortgage Or
      "Unincurred."...................................................................................................5

   C. Plaintiffs' FDCPA Claim (Count II) Should Be Dismissed Because It Is
      Time-Barred And Because The FDCPA Does Not Apply To BANA Under
      These Circumstances. ........................................................................................8

        1. The Statute of Limitations Bars Plaintiffs' FDCPA Claim. ....................9
        2. BANA Is Not A "Debt Collector" Under The FDCPA. .........................10

   D. Plaintiffs' Allegations Do Not Demonstrate A Violation Or Available
      Remedy Under Act 6 (Count III). .....................................................................12

        1. Act 6 Does Not Apply To Plaintiffs' Mortgage Loan. ..........................12

        2. Section 406 Of Act 6 Does Not Apply To BANA, Which Is Not A
           "Residential Mortgage Lender." ..........................................................14

        3. Plaintiffs Do Not Allege That They Actually Paid Any Of The
           Allegedly Improper Fees, And Therefore Plaintiffs Cannot
           Recover Under Section 502 Of Act 6. ..................................................15

   E. Plaintiffs' UTPCPL Claim (Count IV) Should Be Dismissed For Failing
      To Allege An Ascertainable Loss As A Result Of Reliance On The
      Alleged UTPCPL Violation. .............................................................................16

        1. Plaintiffs Have Failed To Allege That They Justifiably Relied On
           Any Fraudulent Or Deceptive Act By BANA. .....................................17

        2. Plaintiffs Have Failed To Allege That They Suffered An
           Ascertainable Loss. .............................................................................20

IV. CONCLUSION .................................................................................................22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................ 5, 20

*Beckett v. Laux,*
   577 A.2d 1341 (Pa. Super. 1990) ................................................... 12

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................ 5, 20

*Belmont v. MB Inv. Partners, Inc.,*
   708 F.3d 470 (3d Cir. 2013) ........................................................... 18

*Benner v. Bank of Am., N.A.,*
   917 F. Supp. 2d 338 (E.D. Pa. 2013) ............................................ 16, 22

*Brown v. Morris,*
   243 F. App'x 31 (5th Cir. 2007) ..................................................... 11

*Cave v. Saxon Mortgage Servs., Inc.,*
   No. 11-4586, 2012 WL 1957588 (E.D. Pa. May 30, 2012) ......... 10

*Forester v. Bank of Am., N.A.,*
   No. 11-0160, 2012 WL 3206471 (S.D. Ala. Aug. 7, 2012) .......... 11

*Galant v. Com., Dept. of Envtl. Res.,*
   626 A.2d 496 (Pa. 1993) ................................................................. 13

*Glover v. F.D.I.C.,*
   698 F.3d 139 (3d Cir. 2012) ........................................................... 9

*Glover v. Udren Law Offices, P.C.,*
   --- A.3d ---, 2014 WL 1622100 (Pa. Super. Apr. 23, 2014) ......... 15

*Glover v. Udren,*
   No. 08-990, 2010 WL 5829248 (W.D. Pa. Oct. 21, 2010) ........... 15, 20

*Herbert v. Fed. Nat'l Mortgage Ass'n,*
   102 B.R. 407 (Bankr. E.D. Pa. 1989) ............................................ 14

*Hunt v. U.S. Tobacco Co.,*
   538 F.3d 217 (3d Cir. 2008) ........................................................... 17, 18, 19

*In re Crystian,*
   210 B.R. 956 (Bankr. W.D. Pa. 1997) ........................................... 8

*In re Grayboyes,*
   No. 05-1780, 2006 WL 437546 (E.D. Pa. Feb. 22, 2006) ............ 13, 14

*In re Harris-Pena,*
   446 B.R. 178 (Bankr. E.D. Pa. 2009) ............................................ 13

*In re Lippolis,*
   228 B.R. 106 (Bankr. E.D. Pa. 1998) ............................................ 14

*Johnson v. BAC Home Loans Servicing, LP,*
   867 F. Supp. 2d 766 (E.D.N.C. 2011) ........................................... 8

*Kaymark v. Bank of America, N.A.*,
  No. 2:13-cv-0419, 2014 WL 1316120 (W.D. Pa. Mar. 31, 2014)................... 6, 7, 21

*Kee v. Zimmer, Inc.*,
  871 F. Supp. 2d 405 (E.D. Pa. 2012) ................................................................ 19

*Keller v. GC Servs., L.P.*,
  No. 13-1654, 2013 WL 3213338 (E.D. Pa. June 26, 2013).................................. 18

*Keller v. Volkswagen of Am., Inc.*,
  733 A.2d 642 (Pa. Super. 1999).......................................................................... 20

*Kemezis v. Matthews*,
  394 F. App'x 956 (3d Cir. 2010).......................................................................... 18

*Kimmel v. Phelan Hallinan & Schmieg*,
  847 F. Supp. 2d 753 (E.D. Pa. 2012) .................................................................. 18

*Lynch v. Capital One Bank (USA), N.A.*,
  No. 12-992, 2013 WL 2915734 (E.D. Pa. June 14, 2013).................................... 18

*Mattson v. U.S. W. Commc'ns, Inc.*,
  967 F.2d 259 (8th Cir. 1992) ................................................................................. 9

*Naas v. Stolman*,
  130 F.3d 892 (9th Cir. 1997) ................................................................................. 9

*Pa. Dept. of Banking v. NCAS of Del., LLC*,
  995 A.2d 422 (Pa. Commw. 2010) ...................................................................... 14

*Pollice v. Nat'l Tax Funding, L.P.*,
  225 F.3d 379 (3d Cir. 2000) ................................................................................ 10

*Rubenstein v. Dovenmuehle Mortgage, Inc.*,
  No. 09-721, 2009 WL 3467769 (E.D. Pa. Oct. 28, 2009) .................................... 20

*Salvati v. Deutsche Bank Nat'l Trust Co., N.A.*,
  No. 12-cv-0971, 2013 WL 1314777 (W.D. Pa. Mar. 28, 2013)...................... 16, 21

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ................................................................................... 5

*Schaffhauser v. Citibank (S.D.) N.A.*,
  340 F. App'x 128 (3d Cir. 2009).......................................................................... 9

*Schwartz v. OneWest Bank, FSB*,
  No. 13-0113, 2013 WL 6037078 (E.D. Pa. Nov. 13, 2013) ................................ 18

*Schwartz v. Rockey*,
  932 A.2d 885 (Pa. 2007)...................................................................................... 17

*Schwarzwaelder v. Fox*,
  895 A.2d 614 (Pa. Super. 2006)...................................................................... 21, 22

*Shivone v. Washington Mut. Bank, F.A.*,
  No. 07-1038, 2008 WL 3154688 (E.D. Pa. Aug. 5, 2008) .................................... 9

*Smith v. Litton Loan Servicing, LP*,
  No. 04-02846, 2005 WL 289927 (E.D. Pa. Feb. 4, 2005) ..................................... 3

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  506 F. App'x 133 (3d Cir. 2012)......................................................................... 18

*Solarchick ex rel. Solarchick v. Metro. Life Ins. Co.*,
    430 F. Supp. 2d 511 (W.D. Pa. 2006) ................................................................ 20

*Sprague v. Neil*,
    No. 05-CV-1605, 2007 WL 3085604 (M.D. Pa. Oct. 19, 2007) ......................... 11

*Stroback v. Camaioni*,
    674 A.2d 257 (Pa. Super. 1996) ......................................................................... 13

*Taggart v. Wells Fargo Home Mortg., Inc.*,
    No. 10-00843, 2013 WL 3009730 (E.D. Pa. June 18, 2013) ............................... 18

*Toy v. Metro. Life Ins. Co.*,
    928 A.2d 186 (Pa. 2007) ..................................................................................... 17

*Trunzo v. CitiMortgage*,
    876 F. Supp. 2d 521 (W.D. Pa. 2012) ........................................................... 15, 16

*Waye v. First Citizen's Nat'l Bank*,
    846 F. Supp. 310 (M.D. Pa. 1994) ..................................................................... 16

*Weinberg v. Sun Co.*,
    777 A.2d 442 (Pa. 2001) ................................................................ 17, 18, 20, 21

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
    854 A.2d 425 (Pa. 2004) ..................................................................................... 17

**Statutes**

12 U.S.C. § 215a(e) ............................................................................................... 11

15 U.S.C. § 1692 ................................................................................................... 10

15 U.S.C. § 1692a(6) ............................................................................................ 10

15 U.S.C. § 1692k(d) .............................................................................................. 9

41 P.S. § 101 .................................................................................................... 13, 14

41 P.S. § 406 .............................................................................................. 12, 14, 15

41 P.S. §§ 501-506 ................................................................................................ 12

41 P.S. § 502 .............................................................................................. 12, 15, 16

73 P.S. § 201-2(4)(xxi) .......................................................................................... 17

73 P.S. § 201-9.2(a) .............................................................................................. 21

**Other Authorities**

Fannie Mae Announcement SVC-2011-16, Updates to Allowable Attorney Foreclosure Fees,
    Sept. 28, 2011, https://www.fanniemae.com/content/announcement/svc1116.pdf .................. 8

PA Ethics Op. 01-200, 2001 WL 1744775 (Pa. Bar. Ass'n Comm. on Legal Ethics &
    Prof. Resp. June 28, 2001) ............................................................................. 7, 8

Defendant Bank of America, N.A. ("BANA") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint with prejudice.

## I.    INTRODUCTION

Plaintiffs Rosalind and Harry Davis have filed an Amended Complaint attempting to remedy the infirmities in their original complaint. Plaintiffs' attempt fails. Their Amended Complaint cannot survive for the same reasons their original complaint could not survive.

Plaintiffs brought this putative class action to challenge certain actions allegedly taken by BANA and others in connection with Plaintiffs' default on their residential real estate loan. The crux of Plaintiffs' allegations has not changed: Plaintiffs allege that BANA (Plaintiffs' loan servicer), BNY Mellon (the noteholder, and not a party to the action), and McCabe, Weisberg & Conway, P.C. ("MWC") (the law firm that filed the foreclosure action) wrongfully demanded attorneys' fees and other foreclosure-related expenses in a foreclosure proceeding brought against Plaintiffs. According to Plaintiffs, the attorneys' fees demanded in the foreclosure complaint were "wrongful" because they were not authorized by Plaintiffs' mortgage.

This Court dismissed Plaintiffs' first complaint, recognizing that Plaintiffs' mortgage contract permits the lender to charge attorneys' fees in connection with Plaintiffs' default. *See* Dkt. No. 38. Plaintiffs' Amended Complaint is fated to reach the same conclusion. Like Plaintiffs' original complaint, the Amended Complaint asserts claims under the Fair Debt Collection Practices Act ("FDCPA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") that are premised on the purported unauthorized charges. But because the charges were authorized by Plaintiffs' mortgage, these claims still fail. Moreover, Plaintiffs' FDCPA claim is time-barred on the face of the Complaint, and even if it were timely, it could not be sustained: BANA does not qualify as a "debt collector" in relation to Plaintiffs'

mortgage.  Additionally, Plaintiffs' UTPCPL claim fails because Plaintiffs have not adequately alleged the reliance and ascertainable loss elements necessary to sustain a UTPCPL claim.

Seeking to prop up their claims, Plaintiffs have also added a claim under the Pennsylvania Loan Interest and Protection Law ("Act 6"), alleging the attorneys' fee charges violated Act 6 and therefore also violated the FDCPA and the UTPCPL.  This claim is futile, though, because Plaintiffs have alleged neither a violation nor an available remedy under Act 6. Without a viable Act 6 claim, Plaintiffs still have no support for their FDCPA and UTPCPL claims.

For these reasons, and for the additional reasons explained fully below, the Court should dismiss with prejudice Plaintiffs' claims against BANA under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.     ALLEGATIONS IN THE COMPLAINT

### A.     Plaintiffs' Loan And Subsequent Default.

Plaintiffs' claims arise from a refinancing loan that they obtained from Countrywide Home Loans, Inc. ("Countrywide") in 2005.  Am. Compl. ¶ 13.  Plaintiffs secured their $89,250 loan obligation with a mortgage naming Countrywide as the mortgagee.  Mortgage, Am. Compl. Ex. B.  Plaintiffs' mortgage and note have since been assigned to BNY Mellon.  Am. Compl. ¶¶ 17-19.  The servicing of Plaintiffs' mortgage was not assigned to BNY Mellon.  *Id.* ¶ 19.  In fact, Plaintiffs do not allege that the servicing rights to their loan were ever transferred.  Rather, Plaintiffs acknowledge that BANA serviced Plaintiffs' loan from at least July 2008 until

approximately October 2012.  *Id.* ¶ 3.  Based on Plaintiffs' allegations, BANA began servicing Plaintiffs' mortgage as a result of the Countrywide acquisition.[1]

Plaintiffs defaulted on their loan in 2008.  *Id.* ¶ 33.  More than three years later, on July 16, 2012, MWC initiated a foreclosure action against Plaintiffs on behalf of BNY Mellon. *Id.* ¶ 34.  BANA was not a party to the foreclosure action but verified the foreclosure complaint as the loan servicer.  *Id.*; Foreclosure Complaint, *Bank of New York Mellon et al. v. Davis et al.*, No. MG-12-001286 (Allegheny County Com. Pl. July 16, 2012), Am. Compl. Ex. C.  The foreclosure complaint included $1,450 in attorneys' fees and $655 in prior foreclosure fees in the "amounts … due on the mortgage."  Am. Compl. ¶¶ 35, 47.  The foreclosure proceeding against Plaintiffs was terminated by Order dated July 19, 2013, based on an agreement between the parties, attached hereto as Exhibit A.[2]  However, Plaintiffs allege, without any specificity, that they "have paid a portion of" the "demanded amount, including, *a fortiori*, a portion of the foreclosure-related fees and costs demanded" and that the "amount demanded" was "liened against" Plaintiffs' home.  Am. Compl. ¶ 41.

After filing and voluntarily dismissing a substantially similar complaint in the Western District of Pennsylvania, Plaintiffs filed this action on July 29, 2013.

---

[1]  Countrywide Home Loans Servicing, LP ("CHLS"), a subsidiary of Countrywide Financial Corporation, originally serviced Plaintiffs' loan.  *See* Am. Compl. ¶ 19 (noting that Countrywide transferred Plaintiffs' note on servicing-retained basis).  CHLS changed its name to BAC Home Loans Servicing, LP in April 2009.  *See id.* ¶ 8.  BAC Home Loans Servicing, LP merged into BANA on July 1, 2011.  *See id.* ¶ 9.

[2]  "Judicial notice may be taken of matters within the public record without converting a motion to dismiss into a motion for summary judgment."  *Smith v. Litton Loan Servicing, LP*, No. 04-02846, 2005 WL 289927, at *5 (E.D. Pa. Feb. 4, 2005) (taking judicial notice of court docket in foreclosure action).

**B.      Plaintiffs' Claims Against BANA.**

Plaintiffs' Amended Complaint includes four counts, three of which name BANA as a defendant (Counts II, III, and IV).  All of the counts against BANA are based on actions allegedly taken by BANA in response to Plaintiffs' default on their mortgage loan.

In Count II, Plaintiffs seek to hold BANA liable as "debt collectors" under the FDCPA, which regulates certain debt collection practices.  Am. Compl. ¶¶ 69-76.  Plaintiffs contend that the foreclosure complaint violated the FDCPA because the fees it demanded were "not incurred" and therefore were not authorized by Plaintiffs' mortgage or Act 6.  *Id.* ¶ 73.  Plaintiffs also claim that the demanded fees were not "based on hourly rates" and consequently "had to be determined reasonable and awarded by a court."  *Id.* ¶ 75.

In Count III, Plaintiffs have added a claim against BANA for violating Section 406 of Act 6 by "liening, charging and/or collecting foreclosure-related attorneys' fees and costs" that were unreasonable because they were fixed fees or were not actually incurred.  *Id.* ¶¶ 85, 88-89.  Plaintiffs allege that they "incurred these unauthorized charges, through their being added to the amount of liens against their property."  *Id.* ¶ 90.  Plaintiffs assert that they are able to recover against BANA under Section 502 of Act 6.  *Id.*

In Count IV, Plaintiffs allege that BANA violated the UTPCPL by "overcharging Homeowners for attorneys' fees and plac[ing] inflated liens on their properties," and by "charg[ing] Homeowners for attorneys' fees that were not authorized by the[ir] Mortgage" and "not permitted by Act 6."  *Id.* ¶ 92.

### III.      LAW AND ARGUMENT

**A.      Standard Of Review For A Motion To Dismiss.**

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead enough facts to state

a claim for relief that is "plausible" as opposed to merely "conceivable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a complaint must contain more than "labels and conclusions;" rather, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff's showing must consist of more than "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) ("We also disregard … 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'") (quoting *Iqbal*, 556 U.S. at 663). Applying this pleading standard, Plaintiffs' Amended Complaint fails to state a claim against BANA, and accordingly, Counts II, III, and IV should be dismissed with prejudice.

**B.      Plaintiffs' Claims Fail Because, Like The Original Complaint, The Amended Complaint Does Not Adequately Plead That The Alleged Attorneys' Fees Were "Unauthorized" By Plaintiffs' Mortgage Or "Unincurred."**

At the heart of all of Plaintiffs' claims is Plaintiffs' theory that BANA purportedly demanded attorneys' fees and costs that were "unincurred" and "not authorized" under their mortgage. *See* Am. Compl. ¶ 72 (FDCPA claim), ¶ 86 (Act 6 claim), ¶ 92 (UTPCPL claim). In particular, Plaintiffs allege that their mortgage "restricts charging for attorneys' fees and costs by at least three preconditions: a disbursement ([Mortgage] ¶ 9), the legal services being performed ([Mortgage] ¶ 14) and, the servicer and lender actually incurred the obligation to pay the performed and incurred charges ([Mortgage] ¶ 22)." Am. Compl. ¶ 21. Plaintiffs overstate the "preconditions" set forth in the mortgage. In actuality, their claims strain the mortgage language to the point of implausibility and are subject to dismissal under *Twombly*.

First, there is no language in the mortgage – and Plaintiff does not cite any – to suggest that BNY Mellon, the lender, must apply Paragraphs 9, 14, and 22 of the mortgage all at the

same time in order to be able to charge fees to Plaintiffs.  Plaintiffs' argument that the lender must meet "three preconditions" is thus unsupported by any facts.

Second, as this Court has recognized, Plaintiffs' mortgage irrefutably authorizes the lender to charge to Plaintiffs attorneys' fees and other expenses related to Plaintiffs' default.  Order (Dkt. No. 38) at n.1, p. 5.  Paragraph 14 of Plaintiffs' mortgage provides that "Lender may charge [Plaintiffs] fees for services performed in connection with [Plaintiffs'] default, … including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this [mortgage] to charge a specific fee to [Plaintiffs] shall not be construed as a prohibition on the charging of such fee."  Mortgage, Am. Compl. Ex. B at ¶ 14.  Similarly, paragraph 22 of the mortgage provides that "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22" related to default and acceleration, "including, but not limited to, attorneys' fees … to the extent permitted by Applicable Law."  *Id.* ¶ 22; *see also id.* ¶ 9 (describing Borrower's obligation to pay amounts disbursed by Lender in event of Borrower's default).  Indeed, the Western District has already rejected Plaintiffs' precise theory that attorneys' fees were unauthorized, advanced by Plaintiffs' counsel in *Kaymark v. Bank of America, N.A.*  There, the Court found that "the Mortgage" – which contained identical language to the mortgage at issue here – "authorizes [BANA] to charge Plaintiff attorneys' fees and other fees related to Plaintiff's default, and that the inclusion of such fees [in the foreclosure complaint] is not prohibited by law."  *Kaymark*, No. 2:13-cv-0419, 2014 WL 1316120, at *1-2 (W.D. Pa. Mar. 31, 2014).[3]

Third, the Court previously cautioned Plaintiffs that they had not "sufficiently pleaded that these fees were unincurred, given (1) the fact that, in filing the Foreclosure Complaint,

---

[3]  The plaintiff in *Kaymark* has appealed the district court's ruling to the Third Circuit Court of Appeals, No. 14-1816.  The appeal has not yet been briefed.

MWC had performed at least some legal services, and (2) that MWC Defendants were not required to attach documentation of said services to the Foreclosure Complaint under Pa. R. Civ. P. 1019(i)." Order (Dkt. No. 38) at n.1, p. 5. Plaintiffs have not cured this pleading defect. The Amended Complaint repeatedly avers that the attorneys' fees were "estimated" or "not incurred," but does nothing to challenge the Court's observation that "in filing the Foreclosure Complaint, MWC *had* performed *at least some* legal services." *Id.* (emphasis added). In fact, Plaintiffs have bolstered BANA's argument. They admit in the Amended Complaint that "[a] portion of the services performed *were incurred* at the time the foreclosure action was commenced." Am. Compl. ¶ 30. Plaintiffs have clearly and unequivocally alleged that BNY Mellon was forced to file a foreclosure complaint against them. *Id.* ¶ 34. This allegation alone shows that BNY Mellon did incur the claimed attorneys' fees and expenses and that services were performed. *See Kaymark*, 2014 WL 1316120, at *16 (adopted Report and Recommendation) (finding that loan instruments did "not prohibit an estimate of reasonable attorneys' fees and other costs that may be included in a Foreclosure Complaint by a lender attempting to enforce his rights under the instruments").

Plaintiffs' allegations that the fees were "fixed" or "flat" (e.g., Am. Compl. ¶¶ 31, 36-37, 39) do not advance their case. Taking Plaintiffs' allegations that the fees were fixed as true, once MWC was retained in connection with Plaintiffs' foreclosure proceedings, the flat fee was "incurred" by BNY Mellon and, therefore, could be assessed against Plaintiffs' account consistent with the terms of the mortgage and Act 6. Indeed, Plaintiffs' entire argument mistakenly assumes that the foreclosure counsel and lender must enter into an hourly billing arrangement. However, flat fee arrangements are lawful in Pennsylvania. *See, e.g.,* PA Ethics Op. 01-200, 2001 WL 1744775 (Pa. Bar. Ass'n Comm. on Legal Ethics & Prof. Resp. June 28,

2001) (discussing propriety of flat fee arrangements in context of third-party payor arrangements); *In re Crystian*, 210 B.R. 956, 961 (Bankr. W.D. Pa. 1997) (permitting lender to seek from defaulted borrower a flat fee charged by its counsel for services in connection with the filing of a foreclosure action). Moreover, Fannie Mae had approved $1,450 as the standard flat fee for Pennsylvania foreclosures during the relevant timeframe because such a figure represents a reasonable amount for handling a basic residential foreclosure in Pennsylvania. *See* Fannie Mae Announcement SVC-2011-16, Updates to Allowable Attorney Foreclosure Fees, Sept. 28, 2011, https://www.fanniemae.com/content/announcement/svc1116.pdf. Nor does Plaintiffs' mortgage contract itself contain any prohibit on flat fees.

In sum, Plaintiffs' Amended Complaint has not improved upon the implausible allegations that the attorneys' fees in the foreclosure complaint were "unincurred" and "not authorized" by Plaintiffs' mortgage. Such allegations cannot form the basis for any claims against BANA, and accordingly, Plaintiffs' claims against BANA again must fail.

**C.    Plaintiffs' FDCPA Claim (Count II) Should Be Dismissed Because It Is Time-Barred And Because The FDCPA Does Not Apply To BANA Under These Circumstances.**

In Count II of the Amended Complaint, Plaintiffs claim that BANA, purportedly a "debt collector," violated the FDCPA by "demanding and collecting fees not authorized by the Mortgage and/or prohibited by Act 6" and "includ[ing] unliquidated attorneys' fees in the body of the foreclosure complaint." Am. Compl. ¶¶ 73-74.

To state an FDCPA claim, a plaintiff "must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011). Because Plaintiffs do not adequately plead that BANA is a "debt

collector," and because their claim is time-barred on the face of the Amended Complaint, their FDPCA claim against BANA cannot survive. Moreover, to the extent Plaintiffs' FDCPA claim is predicated on violations of the mortgage or Act 6, it fails for the reasons described in Sections III.B, *supra*, and III.D, *infra*.

### 1. The Statute of Limitations Bars Plaintiffs' FDCPA Claim.

The FDCPA provides plaintiffs a one-year statute of limitations within which they must bring their claims. 15 U.S.C. § 1692k(d). By the plain language of the statute, the one-year period begins to run on "the date on which the violation occurs." *Id.*; *see also Glover v. F.D.I.C.*, 698 F.3d 139, 148 (3d Cir. 2012) (noting that the statute of limitations is measured "from the date of the alleged violation"). Hence, the clock will start "at the moment the violation occurs, without regard as to when the Plaintiff gained knowledge of her cause of action." *Shivone v. Washington Mut. Bank, F.A.*, No. 07-1038, 2008 WL 3154688, at *2 (E.D. Pa. Aug. 5, 2008); *see also Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992). For that reason, courts have observed that when the alleged FDCPA violation is "the filing of a lawsuit," the statute begins to run on the date of filing, because the "alleged violation" is "the bringing of the suit itself." *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997).[4]

Here, the demand for attorneys' fees in BNY Mellon's foreclosure complaint against Plaintiffs forms the basis for Plaintiffs' FDCPA claim. Am. Compl. ¶¶ 74-75. BANA's only involvement with the foreclosure complaint, as acknowledged by Plaintiffs, was to sign the verification on July 10, 2012, as BNY Mellon's servicer. *Id.* ¶ 34. MWC then filed the

---

[4] BANA acknowledges that the Third Circuit has yet to determine whether the statute of limitations is triggered by the filing of the complaint or by service on the defendant when such dates differ. *Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 130-31 (3d Cir. 2009). BANA submits that, based on the Third Circuit's language in *Glover* that the limitations period begins on "the date on which the violation occurs" (698 F.3d at 145), this Court should follow the sound reasoning set forth by the Ninth Circuit in *Naas*.

foreclosure complaint on July 16, 2012.  *Id.*  Under the one-year statute of limitations, to maintain their FDCPA claim, Plaintiffs were required to file suit prior to July 10, 2013 as to BANA, and in any event, prior to July 16, 2013 at the latest.  However, Plaintiffs did not initiate this action until July 29, 2013.  Because Plaintiffs did not timely file suit, this Court should dismiss their FDCPA claim as barred by the statute of limitations.

### 2.  BANA Is Not A "Debt Collector" Under The FDCPA.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692.  It is, therefore, axiomatic that the target of any FDCPA action must qualify as a "debt collector" under the statute.  *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000).  In an effort to satisfy this requirement, Plaintiffs conclusorily assert that BANA is "also a 'debt collector' as defined by the FDCPA, 15 U.S.C. § 1692(a)(6)."  Am. Compl. ¶ 3.

Plaintiffs' legal conclusion is not consistent with the facts alleged in the Amended Complaint and does not need to be accepted as true.  Under the FDCPA, a "debt collector" is defined as one who attempts to collect debts "owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The FDCPA excludes from this definition loan servicers who acquire the debt prior to default.  *See* 15 U.S.C. § 1692a(6)(F) ("The term [debt collector] does not include … (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) concerns a debt which was not in default at the time it was obtained by such person …."); *see also Cave v. Saxon Mortgage Servs., Inc.*, No. 11-4586, 2012 WL 1957588, at *11 (E.D. Pa. May 30, 2012) (FDCPA claim against mortgage servicer dismissed where complaint's allegations indicated that defendant was servicing mortgage before default).

Based on the facts Plaintiffs allege, BANA did not begin servicing Plaintiffs' loan when it was already in default. Countrywide issued Plaintiffs' loan in 2005. Am. Compl. ¶ 13. Countrywide Home Loans Servicing, LP, the original servicer, changed its name to BAC Home Loans Servicing, LP in April 2009. *Id.* ¶¶ 8-9. In 2011, BAC Home Loans Servicing, LP merged into BANA. *Id.* ¶ 9. The servicing obligation on the mortgage was not "transferred," and yet, BANA began servicing Plaintiffs' mortgage. *Id.* ¶ 3. That is because when Countrywide merged into Bank of America, they became legally the same entity for FDCPA purposes. *See, e.g.*, *Forester v. Bank of Am., N.A.*, No. 11-0160, 2012 WL 3206471, at *7 (S.D. Ala. Aug. 7, 2012) (where Countrywide merged into BAC, BAC was not a debt collector under FDCPA even though it had obtained plaintiff's debt through post-default assignment). As the "receiving association," BANA is deemed to be the same corporation as each bank or banking association participating in the merger. 12 U.S.C. § 215a(e); *see also Sprague v. Neil*, No. 05-CV-1605, 2007 WL 3085604, at *3 (M.D. Pa. Oct. 19, 2007) (Citibank was creditor not subject to the FDCPA because it stood in the shoes of prior banks pursuant to bank mergers). By operation of law, BANA is deemed to have been the servicer since origination of the mortgage. Accordingly, regardless of any alleged date of default, BANA could not have acquired servicing rights by post-default transfer or assignment so as to be a "debt collector" subject to the FDCPA. *See Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (affirming district court's dismissal of FDCPA claim where servicer was successor in interest that acquired the mortgage by merger and thus did not "obtain" it while in default). Plaintiffs' FDCPA claim against BANA should be dismissed with prejudice.

**D.** **Plaintiffs' Allegations Do Not Demonstrate A Violation Or Available Remedy Under Act 6 (Count III).**

Act 6 is a "comprehensive interest and usury" statute that, among other functions, protects homeowners from improper collection of fees by residential mortgage lenders. *Beckett v. Laux*, 577 A.2d 1341, 1343 (Pa. Super. 1990). The statute is divided into six articles. Article IV is entitled "Protective Provisions" and, among other things, limits the attorneys' fees a residential mortgage lender may receive in connection with a foreclosure proceeding. 41 P.S. § 406. Article V provides "Remedies and Penalties" for violations of the substantive provisions of Article IV. *Id.* §§ 501-506. Section 502 of Article V permits a person who "has paid" interest or charges "prohibited or in excess of those allowed by [Act 6] or otherwise by law" to recover "triple the amount of such excess interest or charges" from the person who "has collected" them. *Id.* § 502.

In Count III of the Amended Complaint, Plaintiffs have added a claim under Act 6, hoping to use it as a predicate for their other claims. Count III alleges that BANA violated Section 406 of Act 6 by improperly charging or collecting the foreclosure-related attorneys' fees listed in the foreclosure complaint. Am. Compl. ¶¶ 84-88. Plaintiffs claim that in turn, they are entitled to damages under Section 502 of Act 6. *Id.* ¶ 90. But as even a cursory review of the Amended Complaint shows, Plaintiffs have wholly failed to allege the necessary elements of an Act 6 cause of action. First, Plaintiffs have not alleged – because they cannot allege – that they fall within Act 6's protective scope. Second, Plaintiffs have not suffered an underlying violation of Act 6 or paid any fees that would entitle them to a remedy under Section 502 of Act 6.

**1.** **Act 6 Does Not Apply To Plaintiffs' Mortgage Loan.**

By its terms, Act 6 (and specifically Section 406, which Plaintiffs invoke) applies only to "residential mortgages." 41 P.S. § 406. In October 2005, when Plaintiffs' loan was originated,

Act 6 defined the term "residential mortgage" as "an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less. . . ." 41 P.S. § 101 (2006). In determining whether a loan is a "residential mortgage" under Act 6, a court should look to the principal amount of the loan on the date of origination. *See In re Grayboyes*, No. 05-1780, 2006 WL 437546, at *7 (E.D. Pa. Feb. 22, 2006) ("[T]he principal amount of a loan must be measured at the time of the consummation of the transaction, rather than at subsequent dates . . . [a] methodology [that] comports with the statutory definition of 'residential mortgage,' which specifies the '*original* bona fide principal amount' of the mortgage, rather than successive re-calculations of principal, as the controlling factor in determining qualification for the protections of Act 6.") (quoting 41 P.S. § 101) (emphasis in original), *aff'd*, 223 F. App'x 112 (3d Cir. 2007). If on the date of closing, the mortgage did not fall within Act 6's scope, the mortgage will not later be swept under Act 6. *See In re Harris-Pena*, 446 B.R. 178, 187 n.12 (Bankr. E.D. Pa. 2009) (looking to the mortgage's principal on the date of origination to determine whether Act 6 applied, and acknowledging that the revised threshold amount of the Act 6, 2008 amendment did not retroactively apply to a mortgage that was executed prior to the amendment).[5]

---

[5] Effective September 8, 2008, Act 6 was amended to include loans with a bona fide principal amount of the "base figure" – $217,873 in 2008 dollars, adjusted annually for inflation. *See* 41 P.S. § 101. Under Pennsylvania rules of statutory construction, the 2008 amendatory legislation has no impact on whether Plaintiffs' loan qualifies as a "residential mortgage."

In determining the retroactive application of statutes, the Pennsylvania Supreme Court distinguishes between those altering substantive rights and those only affecting procedural matters. *See Galant v. Com., Dept. of Envtl. Res.*, 626 A.2d 496, 498 (Pa. 1993) ("Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But, where it concerns merely the mode of procedure, it is applied. . . .") (internal quotation omitted); *see also Stroback v. Camaioni*, 674 A.2d 257, 260 (Pa. Super. 1996) (Amendatory legislation "[is] not to be construed as retroactive unless such a construction is so clear as to preclude all question as to the intention of the legislature.").

Plaintiffs' original loan principal was $89,250 (Compl. Ex. B), an amount indisputably in excess of $50,000. Accordingly, Plaintiffs' loan is not a "residential mortgage" under Act 6, it is not subject to Act 6 in any respect, and Plaintiffs cannot recover under Act 6. *See In re Lippolis*, 228 B.R. 106, 110 (Bankr. E.D. Pa. 1998); *Herbert v. Fed. Nat'l Mortgage Ass'n*, 102 B.R. 407, 409-10 (Bankr. E.D. Pa. 1989). This threshold failure to demonstrate the applicability of Act 6 dooms Plaintiffs' claim.

### 2. Section 406 Of Act 6 Does Not Apply To BANA, Which Is Not A "Residential Mortgage Lender."

Plaintiffs' Act 6 claim is predicated on BANA's purported violation of Section 406. Am. Compl. ¶¶ 84-88. Section 406, by its terms, applies only to "residential mortgage lender[s]." 41 P.S. § 406 ("[N]o residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows …."). For purposes of Act 6, a "residential mortgage lender" is "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt." 41 P.S. § 101. Plaintiffs have not alleged facts showing that BANA is a residential mortgage lender. Plaintiffs have not alleged that BANA (as opposed to BNY Mellon) lent money or extended credit to them, nor have Plaintiffs alleged that BANA obtained or held their loan. To the contrary, Plaintiffs allege that BANA was the servicer of their loan, not the "residential mortgage lender." Am. Compl. ¶ 3. Therefore,

---

Retroactive application of the 2008 amendment would sweep Plaintiffs' loan and others like it—which did not qualify as "residential mortgages" at the time of their origination—into Act 6's regulatory framework. This would be unfair and highly prejudicial. *In re Grayboyes*, 2006 WL 437546, at *7 (noting that "making the definition of 'residential mortgage' contingent upon [subsequent events] generates unpredictability as to those rights that demand reification at the outset of the loan transaction and that must remain fixed and knowable throughout the loan relationship, such as the applicable interest rate in loan transactions, the appropriate procedure for foreclosing on residential mortgage loans in default, and the availability of a debtor's right to cure a default"); *Pa. Dept. of Banking v. NCAS of Del., LLC*, 995 A.2d 422 (Pa. Commw. 2010) (determining that another portion of the 2008 Act 6 amendatory legislation should not be applied retroactively).

Section 406 does not regulate BANA's conduct as a loan servicer. *See Trunzo v. CitiMortgage*, 876 F. Supp. 2d 521, 540 (W.D. Pa. 2012) (dismissing claims against loan servicer under Section 406 because loan servicer is not "residential mortgage lender" under Act 6); *Glover v. Udren*, No. 08-990, 2010 WL 5829248, at *7-8 (W.D. Pa. Oct. 21, 2010) (same).

Plaintiffs' invocation of Section 502 does not save their claim. Although Section 502 nominally allows recovery against any "person," Section 502 is not, itself, a substantive liability provision. 41 P.S. § 502. A plaintiff proceeding under Section 502 still must demonstrate an underlying violation of some kind. *See Glover v. Udren Law Offices, P.C.,* --- A.3d ---, 2014 WL 1622100, at *5 (Pa. Super. Apr. 23, 2014) (noting that "Section 502 is a general *remedial* provision for conduct prohibited by Act 6 or otherwise involving the loan of money"). Indeed, the Superior Court in *Glover* held that by Act 6's plain language, a plaintiff seeking Section 502 damages based on a Section 406 violation – as Plaintiffs do here – must show that the impermissible fees were charged by a "residential mortgage lender," as the language of Section 406 requires. *Id.*; 41 P.S. § 406. Thus, the Superior Court expressly rejected the argument that a plaintiff may obtain relief under Section 502 of Act 6 where the defendant was not subject to Section 406 of Act 6. 2014 WL 1622100, at *5. Consequently, because BANA is not subject to Section 406, Plaintiffs may not recover damages from BANA under Section 502. Plaintiffs' Act 6 claim fails for this additional reason.

### 3. Plaintiffs Do Not Allege That They Actually Paid Any Of The Allegedly Improper Fees, And Therefore Plaintiffs Cannot Recover Under Section 502 Of Act 6.

Even if Act 6 applied to Plaintiffs' mortgage and Section 406 applied to BANA (neither of which is true), Plaintiffs' Act 6 claim would fail because Plaintiffs have not alleged that they paid the purportedly illegal fees. Instead, they allege that they "incurred these unauthorized

charges, through their being added to the amount of liens against their property."  Am. Compl. ¶ 90.  This factual shortcoming forecloses recovery under Section 502 of Act 6.

Section 502 only provides a remedy to persons who have "paid charges" and only against persons who have "collected" the charges.  41 P.S. § 502 ("A person who … **has paid charges** prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges … against the person who **has collected** such excess interest or charges.") (emphasis added).  Looking to the plain language of the statute, federal district courts have rejected plaintiffs' efforts to state a claim without having paid the allegedly improper fees at issue.  *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 358 (E.D. Pa. 2013) ("Section 502 only allows recovery of other unlawful charges when such amounts have actually been paid to a creditor"); *Salvati v. Deutsche Bank Nat'l Trust Co., N.A.*, No. 12-cv-0971, 2013 WL 1314777, at *5 (W.D. Pa. Mar. 28, 2013) (rejecting claim under Section 502 where plaintiff "has not paid monies"); *Trunzo v. CitiMortgage*, 876 F. Supp. 2d 521, 541 (W.D. Pa. 2012) ("for a person to be held liable under section 502 they must have collected some illegal charges"); *Waye v. First Citizen's Nat'l Bank*, 846 F. Supp. 310, 319 (M.D. Pa. 1994) (citing Section 502's "has paid" language and concluding that "a demand alone is not sufficient to confer a private cause of action if interest in excess of the statutory maximum was never collected"), *aff'd*, 31 F.3d 1175 (3d Cir. 1994).  In short, because Plaintiffs do not claim to have actually paid the allegedly improper fees, Count III should be dismissed for this reason as well.

**E.      Plaintiffs' UTPCPL Claim (Count IV) Should Be Dismissed For Failing To Allege An Ascertainable Loss As A Result Of Reliance On The Alleged UTPCPL Violation.**

Count IV of Plaintiffs' Amended Complaint alleges that BANA violated Section 201-2(4)(xxi) of the UTPCPL by "overcharging Homeowners for attorneys' fees and plac[ing] inflated liens on their properties," and by "charg[ing] Homeowners for attorneys' fees that were

not authorized by the[ir] Mortgage" or "permitted by Act 6." Am. Compl. ¶ 92. To the extent Plaintiffs base their UTPCPL claims on purported violations of Plaintiffs' mortgage or Act 6, the claims should be dismissed for the reasons stated above in Sections III.B and III.D. In addition, Count IV should be dismissed for the following reasons.

### 1. Plaintiffs Have Failed To Allege That They Justifiably Relied On Any Fraudulent Or Deceptive Act By BANA.

Plaintiffs have not adequately alleged that they justifiably relied on any fraudulent or deceptive act by BANA. Plaintiffs allege a violation of UTPCPL Section 201-2(4)(xxi), the so-called "catch-all provision." Under the catch-all provision of the UTPCPL, a party engages in an unfair or deceptive act or practice by "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

The Supreme Court of Pennsylvania has held that a UTPCPL claim – whether under the catch-all provision or another section – "clearly requires … that a plaintiff suffer an ascertainable loss *as a result of* the defendant's prohibited action." *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) (emphasis in original). The statute's causation requirement is met – that is, loss occurs "*as a result of*" the defendant's action – if the plaintiff relies on the defendant's misrepresentation. *Id.* Because of this "causation requirement," Pennsylvania law requires that a plaintiff "pursuing a claim under the statute must prove justifiable reliance." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) (citing *Schwartz v. Rockey*, 932 A.2d 885, 897 n.16 (Pa. 2007)); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)). Reliance is not merely one of the elements of the claim, but a prerequisite to bringing suit: "the justifiable-reliance requirement … emanates … from the private-plaintiff standing provision," Section 201-9.2(a). *Hunt*, 538 F.3d at 225 (citing *Schwartz*, 932 A.2d at 897 & n.16; *Weinberg*, 777 A.2d at 445-46).

Since *Hunt*, the Third Circuit and this Court have only reaffirmed the requirement that to properly allege a UTPCPL claim, a plaintiff must allege reliance. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012) (where plaintiff "may have alleged wrongful conduct" but "did not allege actions pursued on the basis of that conduct," dismissal was appropriate "[b]ecause justifiable reliance is a necessary element for standing" under the UTPCPL); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 499 (3d Cir. 2013) (plaintiffs did not state UTPCPL claim where "they [did] not allege[] any conduct on [defendant's] part, deceptive or otherwise, that caused them to invest …" (citing *Weinberg*, 777 A.2d at 446)); *Kemezis v. Matthews*, 394 F. App'x 956, 959 (3d Cir. 2010) (affirming dismissal of UTPCPL claim and citing *Hunt*, 538 F.3d at 223-24, for principle that plaintiffs must "prove justifiable reliance even in cases involving the post-1996 catchall provision" based on the "private-plaintiff standing provision of the UTPCPL"); *Schwartz v. OneWest Bank, FSB*, No. 13-0113, 2013 WL 6037078, at *5-6 (E.D. Pa. Nov. 13, 2013) (dismissing UTPCPL catch-all claim for failing to allege justifiable reliance); *Keller v. GC Servs., L.P.*, No. 13-1654, 2013 WL 3213338, at *4 (E.D. Pa. June 26, 2013) (same); *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-00843, 2013 WL 3009730, at *6-7 (E.D. Pa. June 18, 2013) (same), *aff'd*, --- F. App'x ---, 2014 WL 1613715 (3d Cir. 2014); *Lynch v. Capital One Bank (USA), N.A.*, No. 12-992, 2013 WL 2915734, at *4-5 (E.D. Pa. June 14, 2013) (dismissing UTPCPL claim because of failure to plead both reliance and injury, where plaintiff alleged that he relied on allegedly impermissible "charges and interest" on his credit card statements, but did not allege that he had made any payments toward those fees); *Kimmel v. Phelan Hallinan & Schmieg*, 847 F. Supp. 2d 753, 770 (E.D. Pa. 2012) (plaintiffs' UPTCPL claim "oblige[d] them to allege justifiable reliance upon wrongful conduct or a misrepresentation").

In short, the "Third Circuit's decision in *Hunt* interpreting this area of Pennsylvania law is clear." *Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 412 (E.D. Pa. 2012). "[U]nder Third Circuit precedent, to state a claim under the UTPCPL, including the catch-all provision, [the plaintiff] must plead justifiable reliance." *Id.* (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222-23, 227 (3d Cir. 2008)).

In their Amended Complaint, Plaintiffs have not alleged that they justifiably relied on any false or deceptive representation by BANA. Plaintiffs do not adequately plead that they did anything at all in reliance on BANA's conduct. Plaintiffs make only the conclusory assertion that "Mr. and Mrs. Davis have paid a portion of the Foreclosure Complaint's demanded amount, including, *a fortiori*, a portion of the foreclosure fees demanded. The amount demanded in the Foreclosure Complaint was liened against the Davises' home." Am. Compl. ¶ 41. Plaintiffs do not provide any factual enhancement to support this assertion, and their assumptive pleading falls below the *Twombly* and *Iqbal* standard. For that matter, the Amended Complaint notably fails to allege when any amounts were paid and what amounts were paid or why they were paid. The Amended Complaint also does not allege that any such amounts were received by BANA. This is a particularly acute issue as BANA was only the servicer and not the lender when Plaintiffs' mortgage was in default, and at some point in or around October 2012, BANA ceased servicing Plaintiffs' mortgage. *Id.* ¶ 3. It is entirely consistent with Plaintiffs' Amended Complaint – and indeed, a likely scenario – that if Plaintiffs made any payments after the filing of the foreclosure complaint, such payments were ***not*** made to BANA at all.

Hence, the "mere labels" and legal conclusions offered in the Amended Complaint need not be accepted as true under *Twombly* and *Iqbal*. As a result, Plaintiffs fail to allege the reliance that is necessary to state a claim under the UTPCPL. *See Hunt*, 538 F.3d at 222 (The UTPCPL

demands "a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm."). Plaintiffs' UTPCPL claim thus should be dismissed.

### 2. Plaintiffs Have Failed To Allege That They Suffered An Ascertainable Loss.

To bring a private cause of action under the UTPCPL, a plaintiff also must establish "damages arising from the purchase of goods or services." *Glover*, 2010 WL 5829248, at *8 (citing *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646 (Pa. Super. 1999)). The Pennsylvania Supreme Court has observed that the UTPCPL requires "that a plaintiff suffer an ascertainable loss *as a result of* the defendant's prohibited action." *Weinberg*, 777 A.2d at 446. Accordingly, Plaintiffs must be able to point to money or property that they would have had but for BANA's actions. *See Rubenstein v. Dovenmuehle Mortgage, Inc.*, No. 09-721, 2009 WL 3467769, at *6 (E.D. Pa. Oct. 28, 2009) (dismissing UTPCPL claim against mortgage company because plaintiffs could not show an ascertainable loss from mortgage company's failure to immediately disclose that they did not have plaintiffs' complete mortgage payment history); *Solarchick ex rel. Solarchick v. Metro. Life Ins. Co.*, 430 F. Supp. 2d 511, 516 (W.D. Pa. 2006) ("A party cannot lose what she does not or will not have, and cannot be compensated for a loss not suffered.").

Here, Plaintiffs do not allege that they suffered an "ascertainable loss" as a result of receipt of the foreclosure complaint. The Amended Complaint makes only conclusory allegations regarding payments made by Plaintiffs, without specifying how much Plaintiffs paid, when, and to whom. Plaintiffs' "'naked assertion' devoid of 'further factual enhancement'" is not sufficient to state a claim under *Twombly* and *Iqbal*. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs' alternative theory – that they "suffered deprivation of property equal to the inflated fees and costs liened against, and encumbering, [their] home" (Am. Compl. ¶ 42) – lacks

any support in controlling law. The plain language of the UTPCPL requires a plaintiff to have suffered an "ascertainable loss of money or property" as a result of the defendant's conduct. 73 P.S. § 201-9.2(a). The Pennsylvania Supreme Court has ruled that the loss must be alleged with specificity. *Weinberg*, 777 A.2d at 446 (in action based on alleged false advertising regarding premium gasoline, plaintiff would need to allege "the amount [of gasoline] he purchased in order to establish the amount of his ascertainable loss"). And courts construing the UTPCPL have repeatedly rejected plaintiffs' efforts to concoct an "ascertainable loss" when they have not, in fact, lost any money or property. For example, the Pennsylvania Superior Court affirmed dismissal of a complaint alleging that plaintiffs had sold their home to a party whose purported real estate agent turned out to be not a real estate agent, but his mother-in-law. *Schwarzwaelder v. Fox*, 895 A.2d 614, 619 (Pa. Super. 2006). Although the plaintiffs argued that they could have renegotiated the agents' commissions if they had known the true facts, the court determined that allegations of a "speculative" loss do not state a claim for an "ascertainable loss" under the UTPCPL. *Id.*

Moreover, directly on point, Plaintiffs' "lien" theory of ascertainable loss was presented at considerable length by Plaintiffs' counsel in both *Salvati* and *Kaymark* and was rejected by the Western District in both cases. *Salvati*, 2013 WL 1314777, at *6 (acknowledging plaintiff's argument that "'Mr. Salvati and some of the other homeowners were not only charged and liened, but paid some or all of the unauthorized and/or illegal foreclosure fees and costs'" and rejecting UTPCPL claim because "no money was paid and no loss ascertained"); *Kaymark*, 2014 WL 1316120, at *1-2 (rejecting plaintiff's theory that "the Foreclosure Complaint contained

unauthorized attorneys' fees and other fees, and these fees caused a diminution in value of his property" and finding such a diminution in value was not an ascertainable loss).[6]

Practically speaking, even if liens were imposed on Plaintiffs' property, including the allegedly illegal fees, Plaintiffs would not suffer any ascertainable loss until they sold their property, paid the allegedly illegal fees, and realized less from the property sale due to the fees. *See Benner*, 917 F. Supp. 2d at 360 n.16 (The plaintiff argued that fees led to "an increase in [his] mortgage debt and corresponding loss of home equity," but the "fallacy of this argument stems from the fact that Plaintiff has not sold his home" and therefore "has no actual loss from this increase in his liabilities."). But Plaintiffs have not sold their home, and so at this point, their "loss" is "merely a possible loss, which is insufficient to establish a UTPCPL claim." *Id.*; *see also Schwarzwaelder*, 895 A.2d at 619 ("speculative" loss is not "ascertainable loss" under UTPCPL). Consequently, Plaintiffs' UTPCPL claim against BANA should be dismissed.

## IV.    CONCLUSION

Based on the foregoing, Defendant Bank of America, N.A. requests that the Court dismiss Counts II-IV of Plaintiffs' Amended Complaint against Bank of America, N.A. with prejudice.

---

[6] The plaintiffs in *Salvati* and *Kaymark* have appealed the district court's rulings on the lien theory to the Third Circuit Court of Appeals, Nos. 13-1972 and 14-1816. The *Salvati* appeal is fully briefed and awaiting decision. The *Kaymark* appeal has not yet been briefed.

Respectfully submitted,

/s/ *Andrew J. Soven*
Andrew J. Soven
   asoven@reedsmith.com
Marc A. Goldich
   mgoldich@reedsmith.com
REED SMITH LLP
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103
(215) 851-8100

*Attorneys for Defendant*
*Bank of America, N.A.*

Dated:  May 19, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2014, I caused a true and correct copy of the foregoing to be filed electronically and that the same is available for viewing through the Court's ECF system.

REED SMITH LLP

*/s/ Andrew J. Soven*
Andrew J. Soven

Dated: May 19, 2014