IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVIS, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO.  13-4396 |
| BANK OF AMERICA, N.A., et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

      **AND NOW**, this _____ day of August, 2014, upon consideration of Plaintiffs' Amended Class Action Complaint (Doc. 39), Defendants' Terrence J. McCabe, Marc S. Weisberg, Edward D. Conway, and McCabe, Weisberg & Conway, P.C.'s ("MWC Defendants") Motion to Dismiss (Doc. 41), Defendant Bank of America, N.A.'s ("Defendant BOA") Motion to Dismiss (Doc. 42), Plaintiffs' Reply (Doc. 45), Defendants' Sur-Replies (Docs. 53 and 55), and all Supplemental Authority, **IT IS HEREBY ORDERED AND DECREED** that Defendants' Motions are **GRANTED IN PART AND DENIED IN PART** as follows:[1]

---

[1]     The Court now considers Defendants McCabe, Weisberg & Conway, P.C., Terrence J. McCabe, Marc S. Weisberg, Edward D. Conway ("MWC Defendants"), and Bank of America, N.A.'s ("Defendant BOA") Motions to Dismiss Plaintiffs' Amended Complaint.  Plaintiffs' original Complaint was dismissed, with leave to refile, for failure to adequately plead that the alleged attorneys' fees at issue were "unincurred" or "unauthorized" by Plaintiffs' Mortgage.  In relevant part, the Court declared:

    This Court is inclined to agree with Bank of America, N.A. that this Mortgage provision [¶ 14] ostensibly allows for the charge of attorneys' fees in connection with Plaintiff's default, including a related foreclosure action.  Not only have Plaintiffs not addressed this provision in their Complaint, but they have also failed to respond to this argument in their Response to Defendant Bank of America, N.A.'s Motion to Dismiss.  In addition, Plaintiffs have not sufficiently pleaded that these fees were unincurred, given (1) the fact that, in filing the Foreclosure Complaint, MWC had performed at least some legal services, and (2) that MWC Defendants were not required to attach documentation of said

1

services to the Foreclosure Complaint under Pa. R. Civ. P. 1019(I).  Therefore, even taking all the alleged facts as true, Plaintiffs have failed to state a claim for relief.

See Doc. 38.  Because Plaintiffs had not satisfied this threshold issue, the Court declined to proceed further on the merits of Defendants' Motions to Dismiss.

Since that dismissal, the Third Circuit has issued its decision in McLaughlin v. Phelan Hallinan & Schmieg, LLP, Nos. 13-2015, 13-3679 & 13-3712, 2014 WL 2883891 (3d Cir. Jun. 26, 2014).  Plaintiffs have submitted this case as supplemental authority (Doc. 50).  In McLaughlin, the Third Circuit considered the Fair Debt Collection Practices Act's (" FDCPA") application to a law firm letter sent to a debtor plaintiff stating an amount of debt then owing on plaintiff's mortgage - including attorney's fees - that plaintiff asserted included fees and costs that were not incurred as of the date of the letter.  The law firm defendant argued that the letter did not violate the FDCPA because it contained *estimates* of the amount owed.  Reversing the lower court's decision, the Third Circuit declined to adopt the defendant's position, determining that this "characterization" was not consistent with the "unequivocal language of the [l]etter." McLaughlin, 2014 WL 2883891, at *4.  The court continued that if the defendant "wanted to convey that the amounts in the [l]etter were estimates, then it could have said so.  It did not." Id.  The court thereafter concluded that if the amount actually owing as of the date on the letter was less than the amount listed in the letter, the plaintiff had stated a viable claim under the FDCPA.  Id.  Although this case dealt with a letter, and not a foreclosure Complaint, the Court finds the Third Circuit's analysis applicable to the instant action.  Here, the Foreclosure Complaint included line items of $1,450 in attorney's fees, and $655 in prior foreclosure fees that were due on the mortgage as of the filing date.  Granting that Plaintiffs' Mortgage states that "lender may charge borrower fees for services performed in connection with Borrower's default . . . including, but not limited to attorneys' fees," it does not state that foreclosure-related attorney's fees and costs may be charged to a borrower *before* they are actually owed.  In addition, the Court notes that Kaymark v. Bank of Am., N.A., 13-0419, 2014 WL 1316120 (W.D. Pa. Mar. 31, 2014), appeal pending, No. 14-816 (3d Cir. 2014), a case with facts very similar to the case at bar, and in which the Western District of Pennsylvania held that inclusion of unincurred attorney's fees in a foreclosure complaint did not violate the FDCPA, is currently on appeal.  Furthermore, the Kaymark decision cites to the McLaughlin district court's opinion, which, as discussed, *supra*, was reversed on appeal.  Therefore, on this record, the Court will now proceed to the merits of Defendants' arguments.

**RICO Claim**

In Count I, Plaintiffs allege that Defendants Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962© ("RICO") by committing mail and/or wire fraud to further Defendant BOA's unauthorized and/or illegal attorneys' fees collection schemes.  Compl. ¶ 56.  They allege that these activities included filing demands for unauthorized and/or illegal attorney's fees and costs.  Id. at ¶ 61.  MWC Defendants contend that this count must be dismissed because it is based on Defendants' actions in petitioning the state courts in foreclosure actions, and is therefore barred under the Noerr-Pennington doctrine.  MWC Defs.' Mot. to Dismiss 11-12.

"The Noerr-Pennington doctrine derives from the First Amendment's guarantee of the 'right of the people . . . to petition the Government for a redress of grievances.'" Giles v. Phelan, Hallinan & Schmieg, LLP, 2013 WL 2444036, at *5 (D.N.J. June 4, 2013).  Under this rule, those who petition any government department for redress are generally immune from statutory liability for said petitioning conduct, including litigation.  Id. (citing Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972)).  "Although the Noerr-Pennington doctrine originally applied to antitrust cases, courts have expanded its application to other contexts," including RICO claims.  Id.; see also BE & K Const. Co. v. N.L.R.B., 536 U.S. 516 (2002) (applying Noerr-Pennington doctrine to National Labor Relations Act); Sosa v. DIRECTV, Inc., 437 F.3d 923 (9th Cir. 2006) (applying Noerr-Pennington doctrine to RICO claims involving pre-litigation demands and letters); Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 160 (3d Cir. 1988) (Noerr-Pennington doctrine immunized defendants from tort liability for petitioning government to shut down nursing home).

Defendants aver that, pursuant to Giles, Plaintiffs' RICO claim is barred.  In Giles, homeowner plaintiffs brought a RICO claim alleging that defendants - a mortgage foreclosure law firm, its lawyers, and Wells Fargo Bank -

2

engaged in a scheme to prosecute fraudulent mortgage foreclosure lawsuits, and "comprised an enterprise with the purpose of defrauding homeowners by obtaining property through false representations, *including* fraudulent court filings." Giles, 2013 WL 2444036 at *1,3 (emphasis added). The Giles court was therefore faced with a matter of first impression within this Circuit: whether the Noerr-Pennington doctrine bars federal RICO claims based on state foreclosure litigation. Answering in the affirmative, the Giles court declared:

> The Giles' claims are based upon Defendants' actions in petitioning the state foreclosure court. Because the doctrine applies to petitioning activity in all governmental departments, including the courts, and because the doctrine has expanded beyond its antitrust origins, the Court holds that the Noerr-Pennington doctrine bars Plaintiffs' RICO claims arising out of Defendants' prosecution of the . . . foreclosure action.

Giles, 2013 WL 244036, at *6.

The Court is persuaded by the Giles court's reasoning. Here, although numerous, the entirety of Plaintiffs' allegations relating to its RICO claim are premised upon Defendants' actions in petitioning the state foreclosure court. As plead, a plain reading of the Complaint shows that, contrary to Defendants' cursory allegation that this scheme extended beyond foreclosure proceedings (See ¶ 64), Defendants' alleged unlawful activity took place *for the sole purpose* of effectuating foreclosure related litigation. See, e.g., Am. Compl. ¶¶ 56, 59, 60. In fact, Plaintiffs concede in their RICO claim that McCabe, Weisberg, and Conway were specifically employed for the purpose of filing foreclosure complaints. Id. ¶ 59. As such, the Court holds that Plaintiffs' RICO claim is barred by the Noerr-Pennington doctrine, and agrees with Defendants that the sham litigation exception is inapplicable to the instant matter.

**FDCPA Claim**

In Count II of the Complaint, Plaintiffs allege that Defendants violated the FDCPA. Defendants allege that this claim is time barred, and should therefore be dismissed.

There is a one-year statute of limitations for FDCPA claims. See 15 U.S.C. § 1692k(d). "Courts disagree as to when the statute begins to run where the alleged violation is the filing of a lawsuit." Jones v. Wolpoff & Abramson, L.L.P., No. Civ. A. 05-5775, 2006 WL 266102 (E.D. Pa. Jan. 31, 2006); see also Schroeder v. Bank of Am. Corp., 3:12-CV-589, 2012 WL 6929272 (M.D. Pa. Nov. 19, 2012) report and recommendation adopted, 3:CV-12-0589, 2013 WL 298058 (M.D. Pa. Jan. 24, 2013). Compare Johnson v. Riddle, 305 F.3d 1107, 1113-15 (10th Cir. 2002) (holding that the statute of limitations begins to run only once a defendant has been served with notice of a lawsuit) with Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 19997) (finding that the statute of limitations begins to run on the date a lawsuit is filed). This Court has previously resolved that "[w]hen FDCPA claims are predicated upon improperly bringing debt collection litigation, the one-year limitations period begins to run-*at latest*-when the debtor is served with process." Brown v. Udren Law Offices PC, Civ. No. 11-2697, 2011 WL 4011411, at *6(E.D. Pa. Sept. 9, 2011).

The Foreclosure Complaint was filed on July 16, 2012 in Allegheny County, Pennsylvania. Am. Compl. ¶ 34. Plaintiffs were personally served on Friday, July 27, 2012. See Doc. 16-1, Sheriff Returns. Therefore, the *latest* that Plaintiffs could bring an action for the alleged FDCPA violation would be one year from service of process, or July 27, 2013. Plaintiffs allege that they instituted the instant matter via First Class Mail on July 26, 2013. See Doc. 1-1, Civil Cover Sheet. July 27-28, 2013 was a weekend, and the action was not docketed until Monday, July 29, 2013. See Doc. 1. In computing any time period stated in days or a longer unit of time, if the last day would fall on a Saturday, Sunday, or legal holiday, the period will continue until the end of the next day that is not a Saturday, Sunday, or legal holiday. See Fed.R.Civ.Pro. 6(a)(1)©. Therefore, Plaintiffs' Complaint was timely filed within one year of service of process. The Court therefore declines to dismiss Plaintiffs' FDCPA claim under a statute of limitations argument because the statute of limitations issue has not been definitively resolved by this Circuit, and Plaintiffs' filing is considered timely within the more liberal statute of limitations interpretation. This was the only challenge to Plaintiffs' FDCPA claim advanced by MWC Defendants; therefore, MWC Defendants' motion is denied as to Plaintiffs' FDCPA claim.

3

Defendant BOA individually moves to dismiss this count under the premise that it is not a "debt collector" under the FDCPA. The FDCPA bars debt collectors from engaging in unfair debt collection practices. Cave v. Saxon Mortgage Servs., Inc., CIV.A. 11-4586, 2012 WL 1957588, at *11 (E.D. Pa. May 30, 2012). The FDCPA broadly defines a "debt collector" as one who attempts to collect debts "owed or due or asserted to be owed or due another." McAndrew v. Deutsche Bank Nat. Trust Co., 977 F. Supp. 2d 440, 447 n.6 (M.D. Pa. 2013) (citing 15 U.S.C. § 1692a(6)). "Mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." Id. (citing 15 U.S.C. § 1692a(4)(6)(F)). A loan servicer *can* be a "debt collector" under the FDCPA, however, if the debt at issue was in default when it was obtained by the servicer. Id. (citing 15 U.S.C. § 1691(a)(6)(F)).

Countrywide Home Loans, Inc. ("Countrywide") issued Plaintiffs' loan in 2005. Am. Compl. ¶ 13. It appears from the Complaint that Plaintiffs defaulted on their loan in 2008. Am. Compl. ¶ 33. Countrywide was acquired by Defendant BOA in 2008, and was subsequently renamed Bank of America Home Loans ("BAC Home Loans"). Id. at ¶ 8. BAC Home Loans was a wholly-owned subsidiary of Defendant BOA until 2011, when it was merged into Defendant BOA. Countrywide and BAC are considered the same entity for FDCPA purposes, and BOA is the successor to BAC. See Forester v. Bank of Am., N.A., CIV.A. 11-0160-CG-M, 2012 WL 3206471, *1 n. 1, 7 (S.D. Ala. Aug. 7, 2012) (recognizing that Countrywide and BAC are the same; "As noticed by the parties, Bank of America, N.A., is the successor to BAC Home Loans Servicing, L.P."); Mortensen v. Mortg. Elec. Registration Sys., 2010 WL 5376332, at *2 n.9 (S.D.Ala. Dec. 23, 2010) (finding that Countrywide and BAC are "one and the same entity."). Therefore, because Countrywide first issued Plaintiffs' loan in 2005, Defendant BOA did not begin servicing Plaintiff's loan when it was already in default for FDCPA purposes, and does not qualify as a "debt collector" within the meaning of the statute. See Forester 2012 WL 3206471at 7; see also Brown v. Morris, 243 Fed. App'x 31, 34 (5th Cir.2007) ("ABN AMRO, a mortgage company, was not specifically assigned Brown's mortgage for debt-collection purposes. Rather, ABN AMRO acquired it through its merger with Brown's previous mortgage company. Accordingly, ABN AMRO did not 'obtain' her mortgage while it was in default" and ABN AMRO was therefore "not an FDCPA debt collector"); Meyer v. Citimortgage, Inc., 2012 WL 511995, at *7 (E.D.Mich. Feb. 16, 2012) ("CMI is not considered a debt collector under the FDCPA unless the loan in question was in default at the time CMI acquired its interest in the loan. As explained above, CMI is the successor by merger to ABN AMRO, the originating lender and mortgagee, and therefore it is impossible for the loan to have been in default at the time CMI received its interest.") (internal citation omitted); Dues v. Capital One, NA, 2011 WL 3799762, at *4 (E.D.Mich.2011 Aug. 8, 2011) (debt not obtained for purposes of FDCPA through merger). Thus, the Court, noting that Plaintiffs have failed to address this challenge in their Response, agrees with Defendant BOA that Plaintiffs' FDCPA claim against it should be dismissed.

**Act 6 Claim**

In Count III of the Complaint, Plaintiffs allege that Defendants charged and collected prohibited foreclosure related attorney's fees and costs in violation of the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 P.S. § 101, et seq. Specifically, Plaintiffs alleged that Defendants violated Act 6 § 406, and that they are entitled to recovery of the unauthorized attorney's fees and legal expenses under § 502. Defendant BOA avers that Plaintiffs' claim must be dismissed because Act 6 does not apply to Plaintiffs' mortgage loan.

"Act 6 is a comprehensive interest and usury law with numerous functions, one of which is that it offers homeowners with residential mortgages a measure of protection from overly zealous residential mortgage lenders. In re Harris-Pena, 446 B.R. 178, 186 (Bankr. E.D. Pa. 2009) (internal quotation marks omitted); see also Crossley v. Lieberman, 868 F.2d 566, 570 (3d Cir.1989) ("Act 6 was promulgated to protect debtors who carry mortgage loans"). The Act sets a maximum lawful rate of interest for residential mortgages under its purview. Id. § 406 of the Act provides:

> With regard to *residential mortgages*, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
> (1) Reasonable fees for services included in actual settlement costs.
> (2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage,

> attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.
> (3) Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

41 Pa. Stat. Ann. § 406 (West) (emphasis added).

Act 6, as amended on September 8, 2008, defines a residential mortgage as an obligation to pay a sum of money in an original bona fide principal amount of $217,873 or less. Id. at § 101. The previous version of the Act, effective through September 7, 2008, provided for the lower original bona fide principal amount of $50,000 or less. Id. (2005). Notwithstanding the 2008 amendment, courts have looked to the bona fide principal amount set at the time of the transaction, and not a subsequent date, for considering residential mortgages under the Act. See In re Harris-Pena, 446 B.R. 178 (Bankr. E.D. Pa. 2009) (2009 case in which the court noted the 2008 amendment to Act 6, but applied the pre-2008 $50,000 principal amount limit for loan that closed in 2001); see also In re Grayboyes, 2006 WL 437546, at *7 (E.D. Pa. Feb. 22, 2006) aff'd sub nom. In re Graboyes, 223 F. App'x 112 (3d Cir. 2007) ("The principal amount of a loan must be measured at the time of the consummation of the transaction, rather than at subsequent dates, such as after the accrual of interest on unpaid balances.").

Plaintiff's original loan principal amount was $89,250. Am. Compl., Ex. B. This amount exceeds Act 6's $50,000 bona fide principal amount for residential mortgages in place at the time the transaction was consummated in October 2005. Defendant BOA therefore avers that Act 6 does not apply to Plaintiffs' mortgage loan. Rather than substantively challenging this argument, Plaintiffs profess that Defendant's position is misplaced because they do not assert that the 2008 amendment applies retroactively. Rather, Plaintiffs argue for a *prospective* application of the 2008 amendment, in that all mortgages with original financed amounts under $217,873 should be covered under the Act from the amendment's effective date. Although a novel concept, Plaintiffs cite no case law to support this prospective application claim. In addition, although Plaintiffs attempt to distinguish cases the Defendants rely on for their position, they fail to address In re Harris-Pena. Therefore, the Court agrees with Defendant that Plaintiffs' loan does not qualify as a "residential mortgage" under Act 6's § 406.

In addition, Plaintiffs are not entitled to relief under Act 6, § 502. This provision falls under Article V of the Act, which lists the "Remedies and Penalties" available to those who have been affected by an Act 6 violation. Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 357 (E.D. Pa. 2013). "Section 502 is a general remedial provision for conduct prohibited by Act 6 or otherwise involving the loan of money." Glover v. Udren Law Offices, P.C., 2014 PA Super 82, 92 A.3d 24, 30 (Pa. Super. Ct. 2014), reargument denied (June 23, 2014). Section 502 reads in full:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges: Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.

41 Pa. Stat. Ann. § 502 (West).

Plaintiffs can show no violation under § 406 because their loan is not a residential mortgage within the Act's definition. Thus, there is no basis for a remedy under § 502. See Salvati v. Deutsche Bank Nat. Trust Co., N.A., 13-1972, 2014 WL 3719186, at *2-*4 (3d Cir. July 29, 2014) (dismissing §§ 503-504 claims against defendants Bank of America and professional corporation because there were no Act 6 violations under § 403 and/or § 406); Glover v. Udren Law Offices, P.C., 2014 PA Super 82, 92 A.3d 24, 30 (Pa. Super. Ct. 2014), reargument denied (June 23,

5

2014) (finding that plaintiff was not entitled to damages remedy under § 502 where there was no § 406 violation). Although the Court notes that in Trunzo v. Citi Mortgage, 876 F. Supp. 2d 521 (W.D. Pa. 2012), reconsideration denied (July 23, 2012), the Western District of Pennsylvania treated § 502 as a substantive provision, the Court is more persuaded by the Salvati and Glover courts' adherence to the remedial nature of Act 6's Article V provisions; without a violation, there can be no remedy.  The Court therefore dismisses Plaintiffs' Act 6 claim against both MWC Defendants and Defendant BOA.

**UTPCPL Claim**

Last, Plaintiffs allege in Count IV that Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  MWC Defendants aver that the UTPCPL does not apply to claims against an attorney arising out of the practice of law, and cite to the Pennsylvania Supreme Court's decision in Beyers v. Richmond, 937 A.2d 1082 (Pa. 2007).

"While actions alleging attorney misconduct will not be viable under the UTPCPL, claims . . . that allege improper debt collection practices by those who happen to be attorneys are covered."  Fratz v. Goldman & Warshaw, P.C., 11-CV-02577, 2012 WL 4931469 (E.D. Pa. Oct. 16, 2012); see also Yelin v. Swartz, 790 F.Supp.2d 331, 337–38 (E.D.Pa.2011) (denying defendant's motion to dismiss where "[p]laintiff seeks only to challenge [d]efendants' debt-collection practices, not the adequacy of [defendants'] legal representation); Daniels v. Baritz, CIV.A. 02-CV-7929, 2003 WL 21027238, at *5 (E.D. Pa. Apr. 30, 2003) (finding that unfair or deceptive practices allegedly committed by defendants during debt collection efforts are acts within the scope of the UTPCPL).  But see Jackson v. Ferrera, CIV.A. 01-5365, 2002 WL 32348328, at *2 (E.D. Pa. Apr. 16, 2002) (finding that the UTPCPL does not apply to professional malpractice actions); Beyers v. Richmond, 594 Pa. 654, 937 A.2d 1082, 1088 (Pa.2007) (plurality opinion) (finding that an attorney's mishandling of their own client's settlement proceeds is not governed by the UTPCPL, but rather by the state court's exclusive regulatory powers).  Here, Plaintiffs are challenging Defendants' allegedly improper debt collection practices through the foreclosure complaints at issue, and not the adequacy of legal representation.  Therefore, the Court will deny MWC Defendants motion to dismiss under this argument.

Next, both MWC Defendants and Defendant BOA contend that Plaintiffs' claim must be dismissed because a lien is not an "ascertainable loss of money or property" under the UTPCPL.  Plaintiffs allege that they "suffered an ascertainable loss by either paying the misrepresented and overcharged attorneys' fees in whole or in part and, where Homeowners did not make an actual monetary payment, Homeowners suffered an ascertainable loss of property when the unauthorized attorneys' fees were liened against their homes."  Am. Compl. ¶ 93.  The Davises additionally allege that they, as individual Plaintiffs, have paid a portion of the Foreclosure Complaint's demanded amount.  Id. at ¶ 40.

"[T]he UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices."  Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013) (quoting Ash v. Cont'l Ins. Co., 593 Pa. 523, 932 A.2d 877, 881 (2007)).  In order to make out a viable UTPCPL claim, a plaintiff must show:

> that he 1) purchased or leased goods or services primarily for a personal, family, or household purpose; 2) suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL. 73 P.S. § 201–9.2(a).

Kaymark v. Bank of Am., N.A., 13-CV-0419, 2014 WL 1316120, at *10 (W.D. Pa. Mar. 31, 2014) (citations omitted) (quoting Baynes v. George E. Mason Funeral Home, Inc., No. 3:09-CV-153, 2011 WL 2181469, at *4 (W.D.Pa.2011)).

As to the "ascertainable loss" element, "[w]hile the Pennsylvania Supreme Court mandates a liberal construction of the UTPCPL, lower court cases and the plain language of the statute indicate an actual loss of money or property must have occurred to state a cognizable UTPCPL claim." Benner, 917 F. Supp. 2d at 360; see, e.g., Brock v. Thomas, 782 F.Supp.2d 133, 137 (E.D.Pa.2011) (Plaintiff alleged loss of title to his Philadelphia residence because of Defendant's fraudulent conduct); Baynes v. George E. Mason Funeral Home, Inc., No. 09–153, 2011 WL

1.  MWC Defendants' motion is **GRANTED** as to Count I of the Complaint;

2.  MWC Defendants' motion is **DENIED**, and Defendant BOA's motion is **GRANTED** as to Count II of the Complaint;

3.  Defendants' motions are **GRANTED** as to Count III of the Complaint;

4.  Defendants' motions are **GRANTED** as to all putative Plaintiffs whose only alleged

---

2181469, at *5 (W.D.Pa. June 2, 2011) (Plaintiff had proven loss of money when he purchased defective steel casket instead of solid bronze one that was advertised); Rubenstein v. Dovenmuehle Mortg., Inc., No. 09–721, 2009 WL 3467769, at *6 (E.D.Pa. Oct. 28, 2009) (dismissing UTPCPL claim against mortgage company because plaintiffs could not show an ascertainable loss from mortgage company's failure to immediately disclose that they did not have plaintiffs' complete mortgage payment history); Solarchick ex rel. Solarchick v. Metro. Life Ins. Co., 430 F.Supp.2d 511, 516 (W.D.Pa.2006) ("A party cannot lose what she does not or will not have, and cannot be compensated for a loss not suffered.").

    Courts have generally declined to hold that liens on property constitute an "ascertainable loss" under the UTPCPL.  See Kaymark, 2014 WL 1316120 (finding that lien on property did not constitute an "ascertainable loss"); Trunzo v. Citi Mortgage, 2:11-CV-01124, 2014 WL 1317577 (W.D. Pa. Mar. 31, 2014) (noting that plaintiffs "failed to cite any Pennsylvania state law on point with regard to an automatic lien theory under the UTPCPL that would classify the mere charging of fees as an 'ascertainable loss.'"); Benner, 917 F. Supp. 2d at 360 n.16 ("In Plaintiff's Supplemental Memorandum, he argues that the imposition of property inspection fees was "an increase in [his] mortgage debt and corresponding loss of home equity" and thus an ascertainable loss under the statute.  The fallacy of this argument stems from the fact that Plaintiff has not sold his home. He therefore has no actual loss from this increase in his liabilities. At this point, the loss is merely a possible loss, which is insufficient to establish a **UTPCPL** claim.") (citations omitted) (internal quotation marks omitted).  Although the Court notes that the Third Circuit's recent Salvati decision referenced the *possibility* of a lien constituting an ascertainable loss, it failed to clearly decide this issue.  See Salvati, 2014 WL 3719186 at *4 ("While Salvati argues that Count III alleges an ascertainable loss of property, i.e., the 'increases in his unpaid principal balance and the resultant inflation of the encumbrance on his home, the allegations . . . make no mention of any increased encumbrance or lien on Salvati's property.").  Therefore, the Court does not find that a lien on property constitutes an "ascertainable loss" under the UTPCPL, and will grant Defendants' motion as to all putative plaintiffs whose claims are solely based on liens against their homes.

    Defendant BOA's motion will be declined, however, as to plaintiffs, including the Davises, who have alleged that they made some form of payment.  See Cave v. Saxon Mortgage Servs., Inc., CIV.A. 11-4586, 2013 WL 460082 (E.D. Pa. Feb. 6, 2013) ("Upon consideration of that argument now, we conclude that the Complaint adequately alleges ascertainable loss in that it alleges that Plaintiffs are required to pay increased interest, will suffer longer loan payoff times, face higher principal balances, and are burdened with unaffordable mortgage payments as a result of accepting Ocwen's In–House Modification."); Benner, 917 F. Supp. 2d at 360 ("Without actually paying for the allegedly improper inspection fees, Plaintiff's FCEUA claim, as brought under the UTPCPL, in Count III of the Amended Complaint fails because of his inability to show an "ascertainable loss of money or property" required by the statute."); Grimaldi v. Bank of Am., 3:12-CV-2345, 2013 WL 1050549, *4 (M.D. Pa. Mar. 14, 2013) (Finally, the "ascertainable loss" requirement would be met in that Plaintiff made a payment on the account for which she alleges she was not responsible").  The Court also finds that Plaintiffs have satisfied all the requirements of their UTPCPL claim, including the justifiable reliance prerequisite.  Thus, the Court will grant Defendants' motions to dismiss Plaintiff's UTPCPL claim as to all putative plaintiffs whose claims are solely based on liens against their homes, but deny the motions as to all other plaintiffs, including the Davises.

ascertainable loss was a lien against their property, and **DENIED** as to all putative Plaintiffs, including Plaintiffs Rosalind and Harry Davis, who allege that they have made payment(s).

                                        **BY THE COURT:**

                                       /s/ Petrese B. Tucker

                                       _____
                                       **Hon. Petrese B. Tucker, C.J.**