**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Rosalind Davis and Harry Davis, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania, | Civil Action #2:13-cv-04396-PBT |
| Plaintiffs, | |
| v. | |
| Bank of America, N.A., a debt collector-servicer; and, McCabe, Weisberg & Conway, P.C., a debt collector-law firm; Terrence J. McCabe, an individual; Marc S. Weisberg, an individual; and Edward D. Conway, an individual | |
| Defendants. | |

## MOTION FOR RECONSIDERATION

And now comes the Plaintiff, Rosalind Davis and Harry Davis (hereinafter the "Davises"), individually and on behalf of other similar situated former and current homeowners in Pennsylvania, and makes this their Motion for Reconsideration pursuant to Fed.R.Civ.P. 59(e).

## I.   INTRODUCTION

On August 11, 2014, the Court issued an Order and Opinion granting in part and denying in part the Defendants' Motions to Dismiss.  Document 58.  The Davises now, respectfully, move the Court to reconsider two narrow issues decided in its Order that dismissed their Act 6 claims; finding that "their loan is not a residential mortgage within the Act's definition."  See Order, p. 5.[1]  The Court arrives at this determination by finding, first, that the 2008 amendments to Act 6 increasing the base amount from $50,000 to $217,873 (adjusted annually for inflation)

---

[1] The Davises are well aware of their high burden to prevail in a motion for reconsideration.  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  However, in this case, on this isolated and narrow finding, respectfully the Court has made a "manifest error[] of law."

do not apply to the pre-foreclosure procedures initiated after 2008 for mortgages executed prior to the amendments.  Id.  Respectfully, this finding appears contrary to Pennsylvania case law.  Here, the Court conflates parties' *substantive* rights in a mortgage loan contract with *procedural* rights to enforce those substantive rights which statutory amendments may change.  Numerous Pennsylvania courts, including the Pennsylvania Supreme Court, have held that the procedures necessary to bring a mortgage foreclosure action (e.g., mandatory notices and limits on reasonable attorneys' fees) may be changed by subsequent laws, even where those procedures affect mortgages executed prior to the statutory amendment.   See, e.g., Irv Ackelsberg, Residential Mortgage Foreclosure: Pennsylvania Law and Practice § 4.2.1 (2012).

Second, the Court incorrectly found that a mortgage servicer is not a residential mortgage lender as defined by Act 6, §101 primarily because it is not a mortgagee.  Under the Davises' Mortgage, in ¶20, BOA is a holder of a mortgage obligation and therefore, is a residential mortgage lender by definition.  Thus, BOA is a residential mortgage lender subject to both §406 and §502.  This issue has been already been briefed here.  Document 45, pp. 21-22.  Also see Document 58, pp. 4-6 (analyzing the same).  The Court mistakenly relies on Salvati v. Deutsche Bank Nat. Trust Co., N.A., No. 13-1972, 2014 WL 3719186 (3d Cir. Jul. 29, 2014) (unpublished).  Salvati only applies to the unique pled facts and legal procedure used in that action and does not stand for the legal principle that a servicer, as a matter of law, cannot be a residential mortgage lender as defined in Act 6.

## II. LEGAL ARGUMENT

### *A. The 2008 Amendments to Act 6 Affect the Pre-Foreclosure Procedures Initiated After the Effective Date of the Amendment Even for Mortgages Executed Prior to the Amendment*

Prior to 2008, a residential mortgage was defined as:

> an obligation to pay a sum of money in an original bona fide *principal amount of fifty thousand dollars ($50,000) or less*, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit. (Emphasis added)

See 41 P.S. §101 (definition of "residential mortgage") (language in effect prior to Sept. 5, 2008). In 2008, the Legislature raised the ceiling to $217,873 and provided for annual inflation adjustments by the Department of Banking. See Act 57 of 2008, July 8, P.L. 824, No. 57, § 1.

Mortgagees were required to follow the new procedural requirements mandated by Act 6 for all residential mortgages under the new ceiling if they "commence[d] foreclosure or other legal action" after the effective date of the amendments. See 41 P.S. §406.

In First Nat. Bank of Pennsylvania v. Flanagan, 528 A.2d 134 (Pa. 1987), the Pennsylvania Supreme Court specifically addressed the applicability of the pre-foreclosure procedural requirements to loans that were not covered by Act 6 at the time they were executed, but became covered after subsequent amendments. In Flanagan, a homeowner put his home up as collateral for a business loan executed on March 29, 1979. Id., 267. At the time the loan was executed, it did not meet the definition of "residential mortgage" and was therefore not covered by Act 6. Id. Effective April 6, 1979 – one week after the loan was executed – the definition of "residential mortgage" under Act 6 was amended to include business loans which are secured by residential property, thereby bringing the Flanagans' loan secured by their home under the protection of Act 6. Id. at 269. See Act of April 6, 1989, P.L. 15 § 1, as amended, 41 P.S. §101.

Later, when the Flanagans defaulted on their business loan and the lender sought to foreclose on their home, the lender correctly complied with Act 6's pre-foreclosure procedural requirements. Id., 267.

The Pennsylvania Supreme Court held that the business loan was valid, notwithstanding the parties' failure to comply with Act 6's requirements to notify homeowners *at the time of the execution of the loan* that they could lose their home upon default, because the loan was not covered by Act 6 at the time it was executed.  Id., 270 ("A later law cannot abridge rights under a prior contract.").   However, the Pennsylvania Supreme Court also held that Act 6's pre-foreclosure procedural requirements *do* apply to the loan even though at the time of execution, it was not covered by Act 6.   The Court drew a distinction between substantive rights under the contract and procedural rights to enforce those substantive rights, holding:

> The contract clauses of our state and federal constitutions do not preclude the legislature from passing laws which impose new procedures on enforcement of a substantive right.  The requirement of notice of the lender's intention to foreclose in § 403 of the Loan Law is such a procedural requirement and does not interfere with or deny any substantive rights.  (Internal citations omitted)

Id., 271.[2]

This issue had also arisen when Act 6 was originally enacted in 1974.  Then, like now, courts decided that the new rights under the Act applied to existing mortgages.  In Ministers and Missionaries Ben. Bd. Of Am. Baptist Churches v. Goldworthy, 385 A.2d 358 (Pa.Super. 1978), for example, a mortgagee argued that the pre-foreclosure procedural requirements of the new Act 6 did not apply to a mortgage foreclosure action against a mortgage executed prior to the passage

---

[2] In its Opinion on the Defendants' Motions to Dismiss (Document 58), the Court correctly notes that the Davises "cite no case law to support" their argument that the 2008 amendments to Act 6 apply to pre-foreclosure procedures initiated after 2008 on mortgage loans executed pre-2008. But, neither did BOA.  In retrospect, it was a regrettable omission not to have brought Flanagan, a Pennsylvania Supreme Court case directly on point, to the Court's attention.

of Act 6 (but initiated after Act 6 was enacted.)  Id., 363.  The Court held that the pre-foreclosure

procedural requirements *did* apply:

> In this appeal, we are asked to decide whether the Act of January
> 30, 1974, P.L. 13, No. 6, 41 P.S. § 101 et seq. or more specifically,
> those sections which provide for notice of intention to
> foreclose and the right to cure a default, may be applied in a case
> where the mortgage was executed *prior* to the effective date of the
> Act, but the default occurred *subsequent* to that date. The lower
> court here held that those provisions may not be so applied. We
> disagree.

Id., 325.  See also Market Street National Bank of Shamokin v. Staniszewski, 2 Pa.D.&C.3d 283

(C.P. Northumberland 1977) (the provisions "granting a residential mortgage debtor the right to

cure a default, requiring a residential mortgage lender to give notice of intention to foreclose, and

prohibiting the collection of attorney's fees for expenses incurred during the notice period, were

intended to apply to a pre-existing mortgage agreement").

    The same reasoning of Flanagan and Ministers and Missionaries Ben. Bd. Of Am. Baptist

Churches apply to the 2008 amendments.   The Pennsylvania Legislature's action in 2008

expanding coverage of the pre-foreclosure procedural requirements was also effective as to

existing mortgages.   The Legislature is presumed to know that courts applied Act 6 pre-

foreclosure procedural requirements to mortgages that not covered by Act 6 when they were

executed.  The Legislature could have stated that the amendments to pre-foreclosure procedural

requirements were not to be applied to mortgages executed prior to the effective date of the

amendments, as it did elsewhere, but, it did not.  See Act 91, §1680.403c (in part grandfathering

in pending actions).  Compare United Transp. Union v. Pennsylvania Public Utility Com'n, 68

A.3d 1026, 1036 (Pa.Commw. 2013) ("The continued use of this language indicated that the

analysis remains the same… *Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A.2d 199

(1963) (presumption that similar statutory language will be interpreted the same way courts previously interpret it).").

Instead, §406 states:

> With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
> (1) Reasonable fees for services included in actual settlement costs.
> (2) **Upon commencement of foreclosure or other legal action** with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.
> (3) **Prior to commencement of foreclosure or other legal action** attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($ 50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.
> (Emphasis added)

Therefore, the effective date of the amendment only needs to precede the "commencement of foreclosure or other legal action," not the execution of the mortgage.

In its Motion to Dismiss (Document 42), Bank of America relies on Harris-Pena v. CIT Group/Consumer Fin. Inc. (In re Harris-Pena), 446 B.R. 178 (Bankr.E.D.Pa. 2009), for the proposition that "[i]f on the date of closing, the mortgage did not fall within Act 6's scope, the mortgage will not later be swept under Act 6." Document 42, p. 13. This Court's Opinion on the Motion to Dismiss accepts this argument, stating that "although Plaintiffs attempt to distinguish cases the Defendants rely on for their position, they fail to address In re Harris-Pena." Document 58, p. 5. Respectfully, In re Harris-Pena is not applicable to the case at bar.

In re Harris-Pena concerned a *substantive* right under the mortgage contract: Did Act 6's usury provision, which caps the interest rate that residential mortgage lenders may charge borrowers for residential mortgages, apply to a mortgage that was less than the qualifying $50,000 pre-2008 limit only if certain settlement charges, added to the principal, were removed?

In re Harris-Pena, 446 B.R. at 186-191.  In neither In re Harris-Pena nor the case at bar do the parties dispute that this *substantive* term of the mortgage (e.g., the interest rate) should be governed by whatever version of Act 6 existed at the time of the execution of the mortgage.  The dispute in this case, however, concerns whether the 2008 amendments to Act 6 subject earlier mortgages to the pre-foreclosure *procedural* requirements.  In re Harris-Pena does not discuss and has no bearing on pre-foreclosure *procedural* requirements.  Defendants' cites to In re Harris-Pena are out-of-context.

Furthermore, both the execution of the mortgage at issue in In re Harris-Pena and the bankruptcy action brought by the debtor against the lender were commenced prior to the enactment of the 2008 amendment.  Only procedures used to enforce substantive rights subsequent to the amendment are governed by the amended provision, In re Harris-Pena, where all relevant transactions and occurrences occurred prior to the amendment, is therefore facially inapplicable to the question of which base figure governs procedural rights after the amendment.[3]

The other case cited by this Court's opinion, First Bus. Credit Co. v. Grayboyes (In re Grayboyes), No. 02-33530, 2006 U.S. Dist. LEXIS 6671, 2006 WL 437546 (E.D.Pa. Feb 22, 2006), aff'd sub nom. In re Grayboyes, 223 F.App'x 1112 (3d Cir. 2007), is also inapplicable to whether the 2008 amendments to Act 6 apply to pre-foreclosure procedural requirements initiated after 2008 on mortgage loans executed pre-2008.

---

[3] As noted by the Court, the Davises neglected to address In re Harris-Pena in their Response to Defendants' Motions to Dismiss.  Document 45.  This was an unfortunate oversight.  Although the Davises reliance on and discussion of Pennsylvania Dept. of Banking v. NCAS of Delaware, LLC, 995 A.2d 411(Pa.Commw. 2010) (see Document 45) may be less than clear, NCAS held:
> In *Morabito's Auto Sales v. Department of Transportation*, 552 Pa. 291, 715 A.2d 384 (1998), our Pennsylvania Supreme Court reviewed Section 1926 of the Act, 1 Pa.C.S. § 1926, and noted '*It is well settled, however, that legislation concerning purely procedural matters will be applied not only to litigation commenced after its passage, but also to litigation existing at the time of passage...*'

Id., 435-436.

In re Grayboyes concerned a mortgage loan that was executed in 1992.  Id., *2.  In 2003, Ms. Grayboyes, having never made a payment on the loan, filed for bankruptcy and initiated an adversary proceeding against the lender.  Id., 4-5.  The lender argued that in the years after the loan was executed, the principal balance, with interest, grew to exceed the $50,000 base figure, and therefore the mortgage loan was no longer covered by Act 6.  Id., 22.  In 2006, the bankruptcy court disagreed with the lender, finding that to determine whether a mortgage loan was or was not a "residential mortgage," one must look at the original principal balance at the time the loan was executed and "not subsequent modifications of this amount after payment or non-payment."  Id., 26-29.  In 2007, the bankruptcy court's decision was affirmed on appeal.  In re Grayboyes, 223 F.App'x 1112.  In 2008, Act 6 was amended to increase the base figure. Nothing in In re Grayboyes concerned the applicability of later amendments to procedural requirements necessary to enforce substantive mortgage rights.  Like In re Harris-Pena, both the Mortgage loan at issue and the Act 6 litigation were initiated before the 2008 amendments were enacted.

The Davises generally agree with this Court (and the court in In re Grayboyes) that the original principal balance at the time the mortgage was executed determines whether the *substantive* requirements of Act 6 apply.  But In re Grayboyes does not address the difference between the substantive rights of the parties under the mortgage and the procedures to enforce substantive rights.  That is the question addressed by the Pennsylvania Supreme Court in Flanagan and the Pennsylvania Superior Court in Flanagan and Ministers and Missionaries Ben. Bd. Of Am. Baptist Churches, see infra.

### B.  Bank of America is a Residential Mortgage Lender

It was argued by the Davises that BOA is an Act 6, §101 residential mortgage lender.  See Document 45, pp. 21-22.  In their Amended Complaint, the Davises quote §101's definition of

"person" and "residential mortgage lender." <u>See, e.g.</u> Document 39, p. 5 (quoting their Mortgage, ¶20). <u>Also see</u> Mortgage, ¶20 ("If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.").

In <u>Salvati</u>, with respect to Article VI of Act 6, the district court held that Mr. Salvati failed to state a viable §502 claim because he did not "address BOA's argument in its Brief in Support of its Motion to Dismiss that it was not a residential mortgage lender." <u>See Salvati v. Deutsche Bank Nat. Trust Co., N.A.</u>, No 12-971, 2013 WL 1314777, *2 (W.D.Pa. Mar. 28, 2013). In an unpublished opinion, the Third Circuit concluded that servicer, BOA, was not an Act 6, §101 residential mortgage lender. <u>See, Id.</u>, No. 13-1972, 2014 WL 3719186, *3 (3d Cir. Jul. 29, 2014), holding:

> Salvati has not established that either Bank of America or McCabe fit within this definition. As to Bank of America, Salvati does not challenge the Magistrate Judge's conclusion that his Act 6 claim fails because Bank of America does not meet this definition. As to McCabe, there is no allegation that McCabe lent money, extended or granted credit, or held a residential mortgage obligation, and therefore the complaint fails to establish that McCabe is a "residential mortgage lender."

Legal issues that are not disputed have no precedential value in published opinions. <u>See</u> <u>Webster v. Fall</u>, 266 U.S. 507, 511 (1925) and <u>Grant v. Shalala</u>, 989 F.2d 1332, 1341 (3d Cir. 1993) ("[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitution precedents," (<u>quoting</u> <u>Webster</u>)).

With respect to Act 6 and residential mortgage lenders, this Court concluded:

> Plaintiffs can show no violation under § 406 because their loan is not a residential mortgage within the Act's definition. Thus, there is no basis for a remedy under § 502. <u>See Salvati v. Deutsche Bank Nat. Trust Co., N.A.</u>, 13-1972, 2014 WL 3719186, at *2-*4 (3d Cir. July 29, 2014) (dismissing §§ 503-504 claims against defendants Bank of America and professional corporation because there were no Act 6 violations under § 403 and/or § 406); <u>Glover v. Udren Law Offices, P.C.</u>, 2014 PA Super 82, 92 A.3d 24, 30 (Pa. Super. Ct. 2014), reargument denied (June 23, 2014) (finding that plaintiff was not entitled to damages remedy under § 502 where there was no § 406 violation).

Opinion, pp. 5-6. <u>Also see</u> <u>Id.</u>, p. 5, "In addition, although Plaintiffs attempt to distinguish cases the Defendants rely on for their position, they fail to address <u>In re Harris-Pena</u>. Therefore, the Court agrees with Defendant that Plaintiffs' loan does not qualify as a "residential mortgage" under Act 6's § 406."   However, unlike Mr. Salvati's complaint, the Davises' Amended Complaint provided a pleading that addressed this issue and, unlike <u>Salvati</u>, the issue was fully briefed and not waived.  <u>See, e.g.</u>, Document 45.

Their Amended Complaint, in ¶81, pled the requisite facts to establish that BOA is a holder of a residential mortgage obligation and, therefore, is a residential mortgage lender.

> 81.    Act 6, §101 includes within its broad scope "persons" and "residential mortgage lenders," defined as follows:
> "Person" means an individual, corporation, business trust, estate trust, partnership or association or any other legal entity, and shall include but not be limited to residential mortgage lenders.
> *   *   *
> "Residential mortgage lender" means any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt.  **The terms shall also include the holder at any time of a residential mortgage obligation**.  (Emphasis added)
> Holders of residential mortgage obligations include holders of servicing rights.

<u>See</u> Document 39, pp. 22-23.  <u>Also see</u> Document 45, pp. 21-22.  The Davises argued that BOA is a residential mortgage lender under §101 of Act 6.  <u>See</u> Document 39.  Again, the Davises'

Mortgage provides, "If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser."  Mortgage, ¶20.

In a split decision, the Superior Court found that "the definition of 'person' in section 101 makes clear that when the term 'person' is used, it is not limited to residential mortgage lenders." See Glover v. Udren Law Offices, P.C., 92 A.3d 24, 30-31 (Pa.Super. 2014), appeal pending, No. 334 WAP 2014 (Pa. Jul. 22, 2014).[4]  However, the ultimate outcome in Glover will not apply to the Legislature's use of the term "person" in §101 of Act 6 because it is pled here that BOA is not only a servicer but also a residential mortgage lender.

The district court and the Third Circuit in Salvati based their Act 6 rulings solely on the pleadings and the magistrate proceedings in that case.  The pleadings and procedure in Salvati were *sui generis* and cannot be applied because of the different pleadings and procedures here. The Third Circuit in Salvati did not hold that servicers holding an obligation in a residential mortgage obligation are not residential mortgage lenders under Act 6, §406 and/or Act, §502. Therefore, Salvati is not a merit decision with respect to the definition of an Act 6 residential mortgage lender who also is a servicer (like BOA is here).

---

[4] The outcome of Glover (unpublished) will have no impact on whether BOA is a residential mortgage lender as defined by §101, even if BOA is not found to be a residential mortgage lender.  In re Smith, 866 F.2d 576 (3d Cir. 1989) directly conflicts with Glover.  See Document 45, pp. 28-29.  In re Smith holds that an Article V "person" need not be a residential mortgage lender.  Respectfully, In re Smith should be deemed controlling.

III.    **CONCLUSION**

For the reasons described above, the Davises respectfully move the Court to reconsider that portion of its Order and Opinion that dismissed their Act 6 claims, finding that "their loan is not a residential mortgage within the Act's definition."  Document 58, p. 5.  The *substantive* rights of the parties under the Mortgage contract may not be abridged by subsequent amendments to Act 6.  But, the Davises are *not* seeking to apply the 2008 amendments to alter the substantive rights of the parties to the earlier Mortgage loan.  As the Pennsylvania Supreme Court has held regarding earlier amendments to Act 6, "[t]he contract clauses of our state and federal constitutions do not preclude the legislature from passing laws which impose new procedures on enforcement of a substantive rights."  Flanagan, 528 A.2d at 271.  Respectfully, the Davises also request this Honorable Court to revisit its analysis of the holding of the Third Circuit in Salvati to take into account that the §101 residential mortgage lender defense issue raised and briefed here.  Therefore, Salvati has no application here.  The Davises respectfully seek reconsideration.

[SIGNATURE LINES ON NEXT PAGE]

Respectfully Submitted,
MICHAEL P. MALAKOFF, P.C.
*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Jonathan R. Burns, Esquire
Pennsylvania Attorney I.D. #315206
Ralph N. Feldman, Esquire
Pennsylvania Attorney I.D. #207507
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile:  (412) 281-3262
malakoff@mpmalakoff.com

COMMUNITY LEGAL SERVICES, INC.
OF PHILADELPHIA
Devon Sanders, Esquire
Pennsylvania Attorney I.D. # 77771
Michael Froehlich, Esquire
Pennsylvania Attorney I.D. #92767
1410 W. Erie Avenue
Philadelphia, PA 19140
Telephone: (215) 227-2400
dsanders@clsphila.org
mfroehlich@clsphila.org

*Attorneys for Plaintiffs, Rosalind Davis and Harry Davis, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

**CERTIFICATE OF SERVICE**

I hereby certify that on the **20th** day of **August**, **2014**, a true and correct copy of the foregoing **Motion for Reconsideration** was served upon the following parties of interest via the Court's Electronic Filing System:

Andrew J. Soven, Esquire
Marc A. Goldich, Esquire
REED SMITH, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
asoven@reedsmith.com
mgoldich@reedsmith.com

Jeffrey B. McCarron, Esquire
SWARTZ CAMPBELL, LLC
50 S. 16th Street, 28th Floor
Philadelphia, PA 19102
jmccarron@swartzcampbell.com

/s/Michael P. Malakoff
Michael P. Malakoff, Esquire