IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSALIND DAVIS, et al., | : |
| Plaintiffs, | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 13-4396 |
| BANK OF AMERICA, N.A., et al., | : |
| Defendants. | : |

## MEMORANDUM

Tucker, C.J.                                                                                                    February 3, 2016

      Presently before the Court are Defendant Bank of America, N.A.'s Motion to Strike Class Allegations Relating to Plaintiffs' Unfair Trade Practices and Consumer Protection Law Claim (Doc. 103); Defendant McCabe, Weisberg & Conway, P.C.'s Motion to Strike (Doc. 104); Plaintiffs' Brief in Opposition (Doc. 110); Defendant Bank of America, N.A.'s Reply Brief (Doc. 113); and Plaintiffs' Sur-Reply in Opposition (Doc. 116).  Upon consideration of the parties' submissions and for the reasons set forth below, this Court GRANTS Defendants' Motion.

      **I.    FACTUAL BACKGROUND**

      Plaintiffs Rosalind Davis and Harry Davis ("Plaintiffs") filed an action on their own behalf and on behalf of similarly situated homeowners against Bank of America, N.A. ("Defendant BANA"); the law firm of McCabe, Weisberg & Conway, P.C. ("Defendant MWC"); and Terrance J. McCabe, Marc S. Weisberg, and Edward D. Conway, individual partners at MWC.  Plaintiffs' action arises from the following:

1

On October 24, 2005, the Davises signed a promissory Note and Mortgage with lender Countrywide Home Loans, Inc. ("Countrywide") to refinance their home in the amount of $89,250.  Am. Compl., Doc. 39, ¶ 2.  Plaintiffs agreed to pay their Note, plus interest, in monthly payments over a thirty (30) year period beginning December 1, 2005.  *Id.*  Plaintiff's Mortgage authorized Countrywide to transfer or sell the Note and Mortgage, and also provided for the separate transfer of its servicing rights.  *Id.* ¶ 13.  Under the Mortgage, Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as the nominee for Countrywide and Countrywide's successors and assigns; as such, MERS was authorized to act as the mortgagee. *Id.* ¶ 16.

On September 24, 2010, MERS purported to assign the Mortgage as Nominee from Countrywide to BNY Mellon, as trustee, however the assignment did not include assignment of the Davises' Note.  *Id.* ¶ 17.  On October 20, 2011, MERS purported to assign the Davises' Mortgage and Note to BNY Mellon for a second time, however, this second assignment was the first time that MERS purported to assign the Davises Note as well.  *Id.* ¶ 18.  Shortly after it closed, Countrywide packaged the Davises' Note with a larger pool of notes, which were then transferred on a servicing-retained basis to BNY Mellon as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2005-13.  *Id.* ¶ 19.

Countrywide was acquired by Defendant BANA in 2008 and was renamed Bank of America Home Loans.  *Id.* ¶ 8.  From July 2008 until approximately October 2012, Defendant BANA was the servicer of the Davises' Mortgage.  *Id.* ¶ 3.

As a result of a number of personal events, the Davises were temporarily unable to make their monthly mortgage payments to Defendant BANA.  *Id.* ¶ 33.  On July 16, 2012, BNY Mellon filed a Foreclosure Complaint against the Davises in Allegheny County, Pennsylvania

through its debt collector, Defendant MWC (the "Foreclosure Complaint"). *Id.* ¶ 34. Defendant BANA, BNY Mellon's agent and servicer, verified the Foreclosure Complaint on July 10, 2012. *Id.* The Foreclosure Complaint alleged that as of the pre-foreclosure date of July 16, 2012, a total of $156,512.50 was due and owing, including $1,450.00 in foreclosure attorneys' fees and $655.00 in prior foreclosure attorneys' fees. *Id.* ¶ 35. Plaintiffs allege that neither attorneys' fees were due nor owing as of July 16, 2012 because these amounts were anticipated/estimated fees that had not been disbursed, incurred, or performed. *Id.* Additionally, Plaintiffs allege that part of the $655.00 fee was incurred before the Foreclosure Complaint was filed and, under state law, no more than $50.00 could be charged at that time. *Id.* (citing Act 6, § 406(3)). Plaintiffs further allege that as of July 16, 2012, the foreclosure-related fees and costs demanded in the Foreclosure Complaint had not been incurred for work performed in its entirety, but were simply a flat fee. *Id.* ¶ 36.

## II. PROCEDURAL HISTORY

On April 28, 2015, Plaintiffs filed this Amended Complaint. Doc. 39. In their Amended Complaint the Plaintiffs defined the putative class for certification as:

> [Plaintiffs] and former or current homeowners ("Homeowners") who obtained financing secured by a first mortgage on residential property located within the Commonwealth of Pennsylvania, where Defendant MWC caused a foreclosure complaint to be filed against Homeowners and where Defendant BANA was a servicer for all or part of the time period within six years of the filing of this Complaint.

Am. Compl. ¶ 48. In the Amended Complaint, Plaintiffs alleged four counts against the Defendants. In Count I, Plaintiffs alleged that Defendants Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway violated Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). In Count II, Plaintiffs alleged that Defendants BANA and

MWC violated the Fair Debt Collection Practices Act ("FDCPA") in using deceptive and other unlawful means in the collection and attempted collection of debt.  In Count III, Plaintiffs alleged that Defendants BANA and MWC violated Pennsylvania's Act 6, an Act that regulates homeowners/mortgagor's rights, by charging and/or collecting prohibited foreclosure-related attorneys' fees and costs.  Lastly, in Count IV, Plaintiffs allege that Defendants BANA and MWC violated the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") by misrepresenting and/or charging and liening unauthorized, illegal attorneys' fees.

On August 11, 2014, this Court granted in part and denied in part Defendants' motions to dismiss.  Doc. 58.  Notably, this Court dismissed Counts I (RICO) and III (Act 6), thereby dismissing the individual Defendants from the action.  *Id.*  Additionally, this Court dismissed Count II (FDCPA) as to Defendant BANA but not Defendant MWC.  *Id.*  This Court also dismissed Count IV as to putative plaintiffs whose claims were solely based on liens against their homes.  *Id.*  Count IV remains for plaintiffs, including the Davises, who have alleged that they made some form of payment and thus have an "ascertainable loss" under the UTPCPL.  *Id.*

On January 6, 2015, Plaintiffs filed a preliminary motion to certify the class.  Doc. 74.  After receiving the Defendants' response in opposition, the parties entered a consent motion which stated that the parties agreed that Plaintiffs' motion should be denied without prejudice.  Doc. 76.  On January 22, 2015, the Court entered an order that denied Plaintiffs' motion without prejudice.  Doc. 79.

On October 19, 2015, Defendant BANA filed the instant motion to strike, which requested that this Court strike the class allegations of Plaintiffs' UTPCPL claim.  Doc. 103.  Shortly thereafter, on October 26, 2015, Defendant MWC filed a motion to strike and joined BANA's memorandum of law.  (Doc. 104).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court may strike pleading material *sua sponte* or on motion by a party. Fed. R. Civ. P. 12(f). If requested by a party, the party must move "before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." *Id.* Nevertheless, "[b]ecause [a court] may act on [its] own, or upon a party's timely motion, [a court] may consider an untimely motion to strike and grant it if doing so seems proper." *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015) (citing *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 95 (D. N.J. 2014)).

The "purpose of a motion to strike is 'to clean up pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (quoting *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4473228, at *3 (E.D. Pa. Sept. 28, 2012)). Motions to strike under Rule 12(f) are generally disfavored as they are often seen "'as a dilatory or harassing tactic.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1380 (3d ed. 2014)). Accordingly, granting a motion to strike a pleading is seen as "'a drastic remedy'" that "should be used 'sparingly.'" *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quoting *N. Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994)). Thus, courts will often deny such motions "'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 142–43 (E.D. Pa. 2011) (quoting *Wilson v. King*, No. 06–2608, 2010 WL 678102, at *2 (E.D. Pa. Feb. 24, 2010)).

Nevertheless, the Court may grant a motion to strike if the "'[g]rounds for a motion to strike [are] readily apparent from the face of the pleadings or from materials that may be judicially noticed.'" *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (quoting *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 554 (D.C. Haw. 1998)).

In addition to Rule 12(f), Federal Rule of Civil Procedure 23(d)(1)(D) provides that a court adjudicating a class action may issue an order to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Nonetheless, "courts rarely grant motions to strike under Rule 23(d)(1)(D) prior to class discovery." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.,* 284 F.R.D. 238, 244 (E.D. Pa. 2012). However, similar to the standard under Rule 12(f), striking class allegations prior to discovery under Rule 23(d)(1)(D) is appropriate where "'[n]o amount of additional class discovery will alter th[e] conclusion' that the class is not maintainable." *Id.* (quoting *Thompson v. Merck & Co.*, Nos. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 02-4176, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004)).

## IV.  DISCUSSION

Defendants' main contention is that Plaintiffs' class allegations under the UTPCPL, 73 P.S. § 201-9.2, cannot stand under the class certification requirements of Federal Rule of Civil Procedure 23. Thus, this Court must determine whether Plaintiffs can satisfy the class certification requirements.

### A. *Class Certification*

Federal Rule of Civil Procedure 23 governs the class certification procedure and guides this Court in its assessment of whether it is appropriate to strike the class allegations from Plaintiffs' Complaint at this stage of the proceeding in regards to the UTPCPL claims. *See* Fed. R. Civ. P. 23 (outlining the requirements to sustain a class action). Rule 23 provides that "[a]t an

early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). However, the Court should certify the action only after conducting "'a rigorous analysis'" and determining "'that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). This "rigorous analysis" may require delving into the substance of a party's claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551–52 (2011). Thus, the issue before the Court is whether Plaintiffs could sustain their burden in meeting the requirements of Rule 23 for a class action.

In order to obtain class certification, a plaintiff must satisfy four prerequisites under Federal Rule of Civil Procedure 23: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition to these four prerequisites, a party seeking class certification must also demonstrate that the class action fits into one of three forms of class actions listed in Rule 23(b). Fed. R. Civ. P. 23(b). Plaintiffs seek class certification under Rule 23(b)(3). Am. Compl., Doc. 39, ¶ 48. In order to sustain a class action claim under Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Accordingly, "[t]he twin requirements of Rule 23(b)(3) are known as predominance and superiority." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 310.

In the instant case, Defendants do not contest Plaintiffs' ability to satisfy the four prerequisites of a class action provided in Rule 23(a) nor do they contest Plaintiffs' ability to satisfy the superiority requirement. Rather, Defendants challenge Plaintiffs' ability to satisfy the

predominance requirement under Rule 23(b)(3). In order to satisfy the predominance requirement of Rule 23(b)(3), the party moving for certification must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). However, the Rule 23(b)(3) predominance requirement "is significantly more demanding" than showing mere commonality, "requiring more than a common claim." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001) In order to satisfy the predominance requirement, the elements of the underlying claim that a plaintiff seeks to certify must be "capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re Hydrogen Peroxide*, 552 F.3d at 311–12. Accordingly, "'[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.'" *Id.* at 311 (quoting *Newton*, 259 F.3d at 172).

Since the predominance requirement will implicate possible evidence at trial, "'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *Id.* (quoting *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008)). Accordingly, in order to make findings on the predominance requirement, this Court must address Plaintiffs' underlying UTCPCL claim to determine whether common or individual issues will predominate and whether the claim is capable of class-wide proof.

    B. UTPCPL Claim

The UTPCPL declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Cons. Stat. § 201-3. In defining unfair or deceptive practices, the statute includes a catch-all provision that prohibits

"[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* § 201-2(4)(xxi). To establish liability for deceptive conduct, a plaintiff must prove: (1) that the defendant made a misrepresentation or engaged in "conduct likely to deceive a consumer acting reasonably under similar circumstances", (2) that the plaintiff justifiably relied on defendant's misrepresentation or deceptive conduct, and (3) that the plaintiff's "justifiable reliance caused an ascertainable loss." *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012) (quoting *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)). The private remedy for a UTPCPL violation is a statutory award of "actual damages or one hundred dollars ($100), whichever is greater." 73 Pa. Cons. Stat. § 201-9.2(a).

Plaintiffs alleged a violation of the catch-all provision of the UTPCPL when Defendants sent them (and putative plaintiffs) foreclosure complaints containing attorneys' fees that were not actually incurred. As noted above, Plaintiffs define the putative class as follows:

> Mr. and Mrs. Davis and former or current homeowners ("Homeowners") who obtained financing secured by a first mortgage on residential property located within the Commonwealth of Pennsylvania, where MWC caused a foreclosure complaint to be filed against Homeowners, and where BANA was a servicer for all or part of the time period within six years of the filing of this Complaint.

Am. Compl. ¶ 48. This Court limited Plaintiffs' class "to all putative Plaintiffs who allege that they have made payment(s)" and thus suffered an "ascertainable loss" as required by the UTPCPL. Doc. 58, at 7–8.

Because the parties do not contest that there was an alleged misrepresentation or deceptive conduct, this Court's inquiry will begin with the second prong of an UTPCPL claim, justifiable reliance.

      i.  Justifiable Reliance

Plaintiffs' UTPCPL claim requires an affirmative showing of "justifiable reliance." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 219 (3d Cir. 2008) (concluding that in accordance with Pennsylvania Supreme Court precedent, "a private plaintiff pursuing a claim under the [UTPCPL] must prove justifiable reliance").  In Pennsylvania, justifiable reliance requires more than mere causation, more than "reasonable reliance", and more than "reliance in fact." *See Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 201 (Pa. 2007).  Accordingly, "[w]hether reliance on an alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false." *Porreco v. Porreco*, 811 A.2d 566 (Pa. 2002). A plaintiff "is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious." *Toy*, 928 A.2d at 207.  Thus, the very nature of the justified reliance inquiry is highly fact-specific. *Id.* at 208.

In *Markocki v. Old Republic National Title Insurance Co.*, the plaintiffs filed a class action against the defendants for numerous violations, including the UTPCPL.  Civil Action No. 06-2422, 2015 WL 3421401, at *2 (E.D.Pa. May 27, 2015).  Defendants challenged plaintiffs' class status and moved for the court to "decertify the class on the UTPCPL claim because individual issues related to proving justifiable reliance render this case unfit for class adjudication." *Id.* at *4. The court relied on the Third Circuit decision in *Hunt v. U.S. Tobacco Co.*, in addition to various district court decisions, when holding that "a private plaintiff alleging a violation of the UTPCPL must affirmatively prove justifiable reliance in order to prevail." *Id.* at *6.  As such, justifiable reliance could not be presumed and the court would need to examine "each class member's justifiable reliance on [defendant's] or its agent's deceptive conduct" because it "overwhelms common issues." *Id.; see also Hunt*, 538 F.3d at 227 (rejecting a

10

presumption of justifiable reliance based on Pennsylvania precedent). The court also cited several cases where the justifiable reliance element proved fatal to class certification. *Id.* at *5 (discussing *Cohen v. Chi. Title Ins. Co.,* Civ. Action No. 06–873, 2013 WL 842706, at *4–*5 (E.D. Pa. Mar. 7, 2013) and *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 298 (W.D. Pa.2014)).

In the instant case, Plaintiffs argue that common evidence of any payment to BANA following the foreclosure complaint is sufficient to prove justifiable reliance. In short, Plaintiffs ask this Court to presume that any payment following the receipt of a foreclosure complaint means that the putative plaintiff "justifiably relied" on the amounts contained in the foreclosure complaint. This presumption may be appropriate in some class instances. *See Newton*, 259 F.3d at 175 (finding a presumption of reliance appropriate in a fraudulent material misrepresentation claim under Rule 10-b of the Securities Exchange Act of 1934 where the fraudulent acts were part of a common course of conduct impairing the value of securities traded in an "efficient" market). However, it is inappropriate in a UTPCPL claim and the justifiable reliance element of Plaintiffs claim is unsuitable for class treatment.

Despite Plaintiffs' contentions, an individual may or may not make a payment following his or her receipt of a foreclosure complaint for various reasons. Therefore, this Court would need to know whether the payment was made after service of the foreclosure complaint, assume that putative plaintiff read the foreclosure complaint and believed it to be true, and further assume that any partial payment made by the putative plaintiff was meant to be applied to the attorneys' fees listed and not to any other amounts. These are individual inquiries unsuitable for class adjudication. Allowing certification to proceed on the mere proof of payment would, in

sum, amount to an outright presumption of justifiable reliance. This proposition cannot stand under the holdings of *Markocki* and *Hunt*.

> ii. <u>Ascertainable Loss and Damages</u>

Plaintiffs' UTPCPL claim also requires an affirmative showing of an "ascertainable loss." 73 Pa. Cons. Stat. § 201-9.2(a); *Benner v. Bank of Am.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013) (requiring a showing of ascertainable loss or actual payment to sustain a UTPCPL claim). The UTPCPL provides for a statutory award of "actual damages or one hundred dollars ($100), whichever is greater." 73 Pa. Cons. Stat. § 201-9.2. Thus the Court must find whether actual damages or $100 is greater in determining a remedy. *Id.*

In *Glover v. Udren*, the plaintiff, similar to the Plaintiffs in the instant action, alleged that a foreclosure complaint included overstated attorney's fees. Civil No. 08-990, 2013 WL 6237990, at *3 (W.D. Pa. Dec. 3, 2013). The district court, after conducting a de novo review of the plaintiff's class UTPCPL claim and class allegations, denied the plaintiff's motion for class certification. *Id.* at *2. Magistrate Judge Mitchell concluded that because "Plaintiff does not include an element of loss in the class as it is defined . . . the Court would need to conduct mini-hearings as to each class member to determine whether Wells Fargo misrepresented the amount owed on the mortgage, whether they paid that amount, whether the loan was misapplied, and whether the class member suffered a loss because of it." *Id.* at *21. The court reasoned that "'[s]uch a detailed factual analysis would be an unconscionable use of the court's time and makes the case unsuitable for class treatment.'" *Id.* (quoting *Lewis v. Ford Motor Co.*, 263 F.R.D. 252, 264 (W.D. Pa. 2009)).

This Court agrees with the *Glover* analysis of the highly individualized findings needed to determine ascertainable loss under the UTPCPL. While it is valid that some form of payment,

on its face, demonstrates ascertainable loss for individual Plaintiff in this case, it may not be the case for all putative class members. Likewise, some form of payment does not resolve the issue of appropriate damages. This is especially true if only a partial payment was made following receipt of a foreclosure complaint. In the case of partial payment, it would need to be shown that the amount paid by the putative plaintiff was intended to pay the overcharged attorneys' fees, therein creating some recognizable loss under the UTPCPL. Further, even in the case of full payment, it is clear that some attorneys' fees would have been actually incurred at that point due to the foreclosure process. Accordingly, this Court will not presume that each of these actually incurred fees were the same for every class member. Rather, actual loss will vary based on specific circumstances. In addition, determining the reasonableness of the actual fee will vary from case to case. This Court, like the court in *Glover*, would need to conduct "mini-hearings" for each putative plaintiff's claim to resolve the issues of loss, the amount of the actual loss, and damages. 2013 WL 6237990, at *21. This type of inquiry is highly individualized and will predominate over the common class issues, failing the predominance requirement of Rule 23(b)(3).

Accordingly, based on the highly individualized nature of the elements of a UTPCPL claim and its statutory award, this Court finds that Plaintiffs will be unable to satisfy the predominance requirement of Rule 23(b)(3) with or without class discovery.

V.     CONCLUSION

For the reasons explained herein, proof of the essential elements of Plaintiffs' UTPCPL claim requires highly individualized treatment. The need to show each class member's justifiable reliance on the allegedly misrepresented foreclosure complaint will overwhelm common issues, thus failing to meet the predominance requirement of Rule 23(b)(3). In

addition, the highly fact-intensive inquiry required for the "ascertainable loss" element and damages makes class certification improper.  No amount of discovery could surmount this legal obstacle and striking class allegations at this stage will go a long way in streamlining the remaining litigation.  Accordingly, Defendants' Motion to Strike Class Allegations Relating to Plaintiffs' Unfair Trade Practices and Consumer Protection Law Claim is GRANTED.